No. 99,595

STATE OF KANSAS, *Appellee*, v. MELVIN HERNANDEZ MARTINEZ, *Appellant*.

(293 P.3d 718)

Opinion filed February 1, 2013.

*Michelle A. Davis*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Steven J. Obermeier*, assistant district attorney, argued the cause, *Sara Pfeiffer*, legal intern, *Phill Kline*, district attorney, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: In this petition for review, we consider whether a district court properly denied a motion to suppress drug evidence found on Melvin Hernandez Martinez after law enforcement officers seized him under the suspicion that he knew the wherea-

bouts of someone for whom police had a warrant. Martinez argues the officers conducted an unlawful investigatory stop without reasonable suspicion. A divided Court of Appeals panel affirmed the district court's denial of the motion to suppress. We reverse that decision.

## FACTUAL AND PROCEDURAL BACKGROUND

Two law enforcement officers attempting to serve a felony arrest warrant on Alex Aguirre, a juvenile, went to an apartment where he was believed to be living. The officers spoke with two of Aguirre's sisters, who said he moved to Mexico the previous weekend. The officers left and went to another building in the complex because they had information Aguirre occasionally went there. When no one answered, the officers walked back toward their patrol car and saw a maintenance worker, who said he had seen Aguirre several times since the weekend. The officers also had information that Aguirre had been involved that same week in an unrelated incident.

The officers returned to their patrol car and decided to circle back around the complex to Aguirre's address. In doing so, they saw a black Mustang backing out of a parking space located directly behind the door to Aguirre's apartment. One officer said he recognized Martinez as the driver and previously had seen Aguirre riding in the Mustang on multiple occasions. The officer believed the probability of Martinez knowing the whereabouts of Aguirre was "highly likely," since he knew Aguirre had contact with Martinez.

As Martinez backed out, the officers stopped their patrol car inside one of two entry/exit ways into the parking lot. The officers approached Martinez' car on foot, began yelling "stop," whistled, and gestured for him to stop. Both officers were in uniform at the time, and one had a weapon drawn.

Martinez stopped his car, got out, and started walking towards the officers. One officer told Martinez to stop and said that he did not need to get out of his car. Once Martinez began getting back into his car, the officers started walking toward the Mustang and could see Aguirre through a back window lying flat on his back

with his arms at his sides in the back seat. One officer estimated 20 seconds passed from the time officers whistled at Martinez to stop and the time they saw Aguirre in the back seat. The officer said he believed Martinez had been coming from Aguirre's apartment because the only information officers had about Martinez being in the area was that Aguirre lived there.

Once officers saw Aguirre in the back seat, they arrested him for the warrant and then arrested Martinez for obstructing legal process. Martinez was transported to the police station, where officers found cocaine during a routine search of his person. He was alternatively charged with aiding a felon and obstructing legal process, but was acquitted of those charges. He was also charged with possession of cocaine, which is the subject of this appeal.

Martinez filed a motion to suppress the drug evidence and argued he was seized within the meaning of the Fourth Amendment without reasonable suspicion that he had committed, was committing, or was about to commit a crime. The motion was denied by the district court. The district court relied on a previous Court of Appeals decision, *State v. Finley*, 17 Kan. App. 2d 246, 838 P.2d 904 (1992), in which officers were permitted to stop the defendant's car when they suspected he was linked to a complaint involving a screaming woman at a hotel. The court commented that the *Finley* decision "set the bar pretty low" as to what would constitute reasonable suspicion.

Over continued objections to the car stop, Martinez was ultimately convicted at a bench trial of possession of cocaine but was found not guilty of aiding a felon or obstructing legal process. He was sentenced to 12 months' probation with an underlying 10-month prison term.

A majority of the Court of Appeals affirmed the district court's decision to deny Martinez' motion to suppress. It held the officers' initial suspicion that Aguirre was in the car provided sufficient reason to stop Martinez as he drove away and it was reasonable for officers to assume that (1) the sisters told Aguirre the police were looking for him; (2) Martinez knew about the arrest warrant; and (3) Martinez would help Aguirre flee. *State v. Martinez*, No. 99,595, 2009 WL 2143991 (Kan. App. 2009) (unpublished opin-

ion). In a dissenting opinion, Judge Michael B. Buser argued Martinez was stopped and seized and that officers did not have a basis for suspecting Martinez was involved in criminal activity. *Martinez*, 2009 WL 2143991, at *5 (Buser J., dissenting).

We granted Martinez' petition for review, which challenges the panel majority's holding that officers had reasonable suspicion for a *Terry* investigative stop.

## SUPPRESSION OF EVIDENCE

Martinez maintains that the district court erred in denying his motion to suppress the drugs found on him because the officers lacked reasonable suspicion to stop and search him. When confronted with a challenge involving suppression of evidence, the State has the burden of demonstrating a challenged search or seizure was lawful. *State v. Johnson*, 293 Kan. 1, 4, 259 P.3d 719 (2011).

An appellate court generally reviews a trial court's decision on a motion to suppress using a bifurcated standard. The trial court's findings are first reviewed to determine whether they are supported by substantial competent evidence. Appellate courts do not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence. The ultimate legal conclusion regarding the suppression of evidence is then reviewed de novo. If the material facts in a trial court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. 293 Kan. at 4. The facts in this case are uncontested, and the parties stipulated to them before the bench trial.

### Was This an Investigatory Stop?

Encounters between law enforcement officers and the public are generally classified under one of the following four categories: consensual encounters; investigatory detentions, also known as *Terry* stops; public safety stops; and arrests. *State v. Hill*, 281 Kan. 136, 141, 130 P.3d 1 (2006).

The focus of our inquiry in this case is on *Terry* investigatory stops, named after the United States Supreme Court decision,

*Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), in which the Court held that police may stop and frisk a person if they have reasonable suspicion that the person is engaged in criminal activity and when officers have a reasonable belief the person poses a safety concern. Our legislature has codified this rule under K.S.A. 22-2402.

At the outset, we note the parties agree an investigatory stop occurred when police stopped Martinez. More than one officer was present, and those officers used a commanding tone of voice, told Martinez to stop, and attempted to control his ability to leave the driveway; one officer also displayed a weapon. Moreover, Martinez submitted to the officers' show of authority by stopping his car. See *State v. Weaver*, 259 Kan. 844, 849, 915 P.3d 746 (1996) (a seizure occurs when defendant submits to show of authority by stopping); see also *State v. Walker*, 292 Kan. 1, 6, 251 P.3d 618 (2011) (investigatory stop occurred when there was more than one officer, a display of weapon, physical contact by officer, use of commanding voice tone and sirens or lights, command to stop, and attempt to control ability to flee); *Johnson*, 293 Kan. at 5 (seizure occurred when officers were dressed in FBI clothes, had weapons drawn, used lights on squad cars). Martinez would not feel free to terminate the encounter or refuse the officers' demands to stop.

But the parties' agreement ends at that point. The divergence in their views concerns whether the officers based their investigatory stop on specific articulable facts that Martinez had committed, or was about to engage in, criminal activity. Martinez argues they did not and that the exclusionary rule prohibited the admission of the cocaine evidence found after he was unlawfully seized.

The point at which a person is seized is considered "critical," because at that point the officers must have knowledge of facts giving rise to reasonable suspicion that person is committing, committed, or is about to commit a crime. *State v. Morris*, 276 Kan. 11, 17, 72 P.3d 570 (2003). Thus, our inquiry turns to whether the officers had reasonable suspicion Martinez was engaged in criminal activity before they initiated the stop.

*Was There Reasonable Suspicion?*

Reasonable suspicion is a much lower standard than probable cause and may be established with less reliable information. But similar to probable cause, reasonable suspicion depends on both the information possessed by police and its degree of reliability. Both quantity and quality are considered together in an examination of the totality of circumstances in determining whether reasonable suspicion exists. *State v. Parker*, 282 Kan. 584, 594, 147 P.3d 115 (2006). What is reasonable depends on the totality of circumstances in the view of a trained law enforcement officer. We have often repeated the statement that consideration of those circumstances compels a court to

" 'judge the officer's conduct in light of common sense and ordinary human experience. [Citation omitted.] "Our task . . . is not to pigeonhole each purported fact as either consistent with innocent travel or manifestly suspicious," [citation omitted], but to determine whether the totality of the circumstances justify the detention. [Citation omitted.] We make our determination with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances, [citation omitted], remembering that reasonable suspicion represents a "minimum level of objective justification" which is "considerably less than proof of wrongdoing by a preponderance of the evidence." ' " *State v. DeMarco*, 263 Kan. 727, 735, 952 P.2d 1276 (1998) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 [1989]).

The Court of Appeals majority found reasonable suspicion came from two possible scenarios the officers considered when they saw Martinez' car: First, that Aguirre was in the car with Martinez, and second, that even if Aguirre was not in the car, Martinez might know where he was. *Martinez*, 2009 WL 2143991, at *2. The majority did not address the second scenario further after finding the officers' suspicion about the first was enough to sustain the stop.

The majority held the officers' suspicion that Aguirre was in the car was supported by one of the officer's testimony that Aguirre lived next to the exit driveway where Martinez had parked; the officer knew of no reason why Martinez would be at the complex except to see Aguirre; officers had previously seen Aguirre riding in Martinez' car; officers saw Martinez leaving only 5 minutes after they had left Aguirre's house; he was leaving from a different side

of the building from the one officers had initially parked by; and officers believed the sisters lied based on the maintenance worker's recent Aguirre sighting. Based on this testimony, the panel majority held that the officers had reasonable suspicion to believe Aguirre was in Martinez' car. 2009 WL 2143991, at *3. And as further support for its finding, the majority cited to *Finley*, 17 Kan. App. 2d 246.

But the district court and panel majority overlook the statutory criteria for investigatory stops in K.S.A. 22-2402. Officers may conduct such stops only when there is reasonable suspicion the person "is committing, has committed or is about to commit a crime." K.S.A. 22-2402(1). Here there was no reasonable basis to believe Martinez was committing the crime of aiding a felon or obstructing legal process by helping Aguirre escape.

There is no indication, for example, that the officers witnessed a contemporaneous sighting of both suspects together at the apartment complex on this occasion. The officers never testified that they saw Aguirre in the car prior to the stop, and there was no evidence the officers believed Aguirre might be concealed in the car. Additionally, there was no reasonable basis upon which officers could believe Martinez was in possession of cocaine.

Rather than relying on *Finley*, which can be distinguished because it involved exigent circumstances concerning a just-reported violent crime at or near the scene, we believe this case is more analogous to another Court of Appeals decision, *State v. Young*, No. 102,497, 2010 WL 1462760 (Kan. App. 2010) (unpublished opinion), in which the panel held officers were not permitted to stop a woman whom they suspected of carrying a fugitive around in a car trunk. In that case, the court characterized the officer's suspicion that the fugitive was in the trunk as "purely speculative." WL 1462760, at *3.

Reduced to its essence, the district court here found experienced officers with a hunch rises to reasonable suspicion. And although the officers' hunch in this case was correct—that Martinez was traveling with Aguirre—a hunch has never been the benchmark of a proper police seizure. *Terry*, 392 U.S. at 27 (officer hunch accorded no weight in determining whether officer acted reasona-

bly); *Johnson*, 293 Kan. 1, Syl. ¶ 4 (officer must articulate more than a hunch of criminal activity).

K.S.A. 22-2402 provides that police may stop any person in a public place who is reasonably suspected of committing a crime, of having committed a crime, or about to commit a crime. Those circumstances are not demonstrated by the facts articulated by the officers. Martinez' motion to suppress should have been granted, and the evidence obtained as a direct result of the illegal seizure—the cocaine—should have been suppressed.

Reversed and remanded for further proceedings.