NOT DESIGNATED FOR PUBLICATION

No. 113,052

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STEPHEN MICHAEL SCHICKE,
*Appellant/Cross-appellee*,

v.

STATE OF KANSAS,
*Appellee/Cross-appellant.*

MEMORANDUM OPINION

Appeal from Montgomery District Court; GARY R. HOUSE, judge. Opinion filed April 15, 2016.
Affirmed in part and vacated in part.

*Philip J. Bernhart*, of Coffeyville, for appellant/cross-appellee.

*Lee J. Davidson*, assistant attorney general, for appellee/cross-appellant.

Before SCHROEDER, P.J., HILL and GARDNER, JJ.

*Per Curiam:* Stephen Michael Schicke sought habeas corpus relief under K.S.A.
60-1507 from the district court, claiming that because his lawyer failed to communicate
with him, a favorable plea offer from the county attorney expired. Schicke claimed this
failure to communicate denied him the opportunity to accept the offer. The district court
denied Schicke's motion. Because the record reveals that Schicke and his lawyer met
before the offer lapsed and that Schicke rejected the offer, we hold he was not denied the
opportunity to accept the plea offer. We decline Schicke's invitation to reweigh the
evidence and affirm the district court's denial of his K.S.A. 60-1507 motion.

1

We do, however, grant the State's cross-appeal concerning the court's stay of execution of Schicke's prison sentence and setting a supersedeas bond pending the resolution of this appeal of his habeas corpus motion. We hold that order was erroneous, as there is no rule that permits a prisoner release from prison pending an appeal of the denial of that prisoner's K.S.A. 60-1507 motion. We vacate the district court's stay of execution and setting a supersedeas bond.

The State charged Schicke with possession of drug paraphernalia, a severity level 4 drug felony, and unlawful manufacture of methamphetamine, a severity level 1 drug felony, in two separate cases. The court appointed John Gillett to represent Schicke. At one point, the State offered that if Schicke pled guilty to a single count of conspiracy to possess anhydrous ammonia with intent to manufacture methamphetamine, a severity level 2 drug felony, then the State would dismiss the remaining charges. The offer would amount to a 51-month prison term. The offer stated that it expired at the close of business on December 8, 2009.

After that, Assistant Attorney General Brian Duncan entered the case. The State amended Schicke's charge in both cases to conspiracy to manufacture methamphetamine, also a severity level 1 drug felony. On January 11, 2010, Gillett wrote to Duncan that Schicke would accept the plea offer. Duncan refused. Gillett withdrew from the case on February 8, 2010. Edward Battitori began representing Schicke. On December 21, 2010, Schicke pled guilty to one count of conspiracy to manufacture methamphetamine and one count of possession of drug paraphernalia.

In February 2011, Schicke was sentenced to a downward durational departure sentence of 120 months in prison because of his limited criminal history and the agreement between the parties. Schicke filed notices of appeal in both cases. He appealed the district court's order that Schicke reimburse the Board of Indigents' Defense Services attorney fees because the court failed to make the necessary findings to impose that order.

2

On April 27, 2012, this court agreed, vacated the order for reimbursement, and remanded for further proceedings. *State v. Schicke*, No. 106,211, 2012 WL 1524354 (Kan. App. 2012) (unpublished opinion).

Then, in 2013, Schicke filed a K.S.A. 60-1507 motion in which he claimed ineffective assistance of counsel "due to counsels [*sic*] inaction concerning plea negotiations and/or the acceptance thereof." At the evidentiary hearing on the matter, Schicke called several witnesses and Gillett testified for the State. Schicke's and Gillett's testimony differed.

*We summarize the evidence from the hearing.*

Schicke testified that Gillett visited him on November 24, 2009, in jail and presented to him the county attorney's plea offer dated November 23. Gillett told Schicke, "They usually will offer a second deal" but "[t]his is a pretty decent plea." Gillett said further, "I tell you what, Mr. Schicke. You have a couple weeks. Talk it over with your family and think about it. I will be back on or before the due date to get your answer." The plea expiration date was December 8, 2009. Schicke testified that he did not see Gillett again between November 24 and December 8. Schicke called Gillett on December 1, but Gillett's office would not accept a collect call.

Schicke testified that he spoke with his brother, sons, and mother about taking the plea. His son convinced him to accept the plea offer. Before December 8, Schicke asked his mother to have someone in the family call Gillett and tell him that Schicke wanted to accept the plea offer. Gillett visited Schicke several days after December 8, on a weekend around December 12, and Schicke stated that he wanted to take the plea deal. Gillett said he would talk to the county attorney's office and see if it would still honor the plea offer; Gillett believed that it would. Gillett did not visit Schicke again. He sent a letter 3 to 4 weeks later stating that the State would not honor the plea offer.

3

The jail visitation log confirmed that Gillett visited Schicke on November 24, 2009, but shows no later visits by Gillett. Troy Mackie, a jail administrator for Montgomery County, testified that weekend visits were not logged. The jail call log confirmed a collect call by Schicke to Gillett on December 1.

Ann, Schicke's mother, testified that she called Gillett's office before December 8, talked to Nancy, Gillett's secretary, and stated that Schicke wanted to take the plea. Lane, Schicke's son, testified that he begged his father to accept the plea and, sometime before December 8, his father agreed. Andy, Schicke's brother, testified that during the timeframe between November 23 and December 8, Schicke complained that he could not contact his attorney. Andy called Gillett's office, spoke with the receptionist, and asked that Gillett get in touch with Schicke. Andy recalled that Schicke had decided to accept the plea offer prior to December 8, but he did not have the opportunity to speak with Schicke's attorney prior to that date.

Gillett testified that his office received the plea offer and sent it to Schicke by mail on November 25. The jail mail log shows that Schicke received correspondence from Gillett on November 30. Gillett testified on direct examination that sometime between November 25 and December 8, he surely reviewed the county attorney's plea offer with Schicke. On cross-examination, Gillett testified that he was not sure if that conversation was before December 8; he thought it was after December 8. He was sure he had visited Schicke in person because he had handwritten notes with calculations of the prison time Schicke would serve. The plea offer was for 51 months, but it would amount to a little over 37 months with good-time credit.

Gillett confirmed that Schicke's mother called him on December 3 and left a message that Schicke wanted to speak with him, but the message did not say that Schicke wanted to take the plea. Gillett testified that he went to visit Schicke on December 11, but Schicke was out on work detail. The county attorney agreed, by e-mail, to extend the

4

deadline to December 18. Up to that point, Schicke had not agreed to the plea offer of 51 months. It was not unusual for the county attorney to extend the deadline on a plea offer. Gillett went to see Schicke sometime between December 11 and 18, but Schicke was not willing to take the plea.

Gillett wrote to Schicke on December 29 to tell him that his cases had been turned over to the Attorney General's office. The letter was admitted into evidence. In the letter, Gillett stated that, based on his experience, the Attorney General's office would not deal on this kind of charge unless it was for 84 months. It went on:

> "That is not good since the County Attorney had made the offer to let you plead to a Level 2. Remember we calculated that out to fifty-one (51) months with credits, etc, you have leaving you with 37.35 months to do.
>
>  . . . .
> "If you want to *reconsider* the Level 2 offer I can try to get them to do that but I am not sure they will." (Emphasis added.)

Gillett testified that the next time he heard from Schicke was a letter postmarked January 6. That letter was admitted into evidence. In the letter, Schicke stated that he did not have anything to do with the crimes he was charged with and he wanted to know why the Attorney General took over his case. The letter did not say anything about the plea offer. Gillett testified that Schicke finally indicated a willingness to accept the plea offer in a phone conversation, but Gillett did not remember when that occurred. He remembered that he and Schicke talked on a phone that was not being recorded. On January 11, Gillett wrote to Assistant Attorney General Duncan that Schicke would agree to the county attorney's November 23 plea offer. That letter was admitted into evidence. Duncan did not agree to the plea deal.

Schicke testified on rebuttal that he never knew the county attorney had extended the deadline until Gillett testified at the K.S.A. 60-1507 motion hearing. The district court ordered the parties to submit proposed findings of fact and conclusions of law.

*We list the trial court's findings.*

The district court made a thorough evaluation of the testimony presented by both sides. In a detailed order, the court recounted what had transpired:

- Gillett forwarded the counteroffer to Schicke by mail on November 25, 2009. The jail mail log shows Schicke received mail correspondence from Gillett on November 30, 2009. The 5-day delay was likely explained by the intervening Thanksgiving holiday and Sunday.
- Gillett met with Schicke in the Montgomery County jail prior to the December 8, 2009, expiration date. At this meeting, Gillett advised Schicke about how much prison time he would serve under the State's offer with good time and time served. Additionally, Gillett talked with Schicke about the evidence against him and his concern that one of Schicke's codefendants may make a deal to testify against him. In light of this, Gillett told Schicke he thought the offer was decent. However, Schicke did not accept the county attorney's offer.
- Schicke did not see Gillett again before the December 8, 2009, expiration date. He attempted to call Gillett collect on December 1, 2009. The call was not accepted, as Gillett's office would not accept collect calls.
- Schicke discussed the plea offer with family members. He asked his mother to call Gillett's office and advise he wanted to accept the plea offer.
- Gillett was in Montgomery County on December 10 or 11, 2009, and tried to again speak with Schicke about the plea offer. But Schicke was out on a work detail. Gillett wrote the county attorney requesting her to keep the plea offer open. She agreed by an e-mail to Gillett to extend the plea offer to December 18, 2009.

6

- Gillett either met with or had phone contact with Schicke before expiration of the extended December 18th deadline. Schicke was still unwilling to accept the county attorney's offer and specifically was not willing to take the 51 months prison time. Schicke recalls meeting with Gillett on a weekend day during this time period, sometime around December 12, 2009. He claims that at this meeting, he told Gillett he wanted to accept the offer.

- Gillett wrote to Schicke on December 29, 2009. He said, "If you want to reconsider the Level 2 offer I can try to get them to do that but I am not sure the[y] will." The jail mail log showed Schicke received mail from Gillett on January 4, 2010. The 6-day delay was likely explained by the intervening New Year's holiday and Sunday.

- On January 6, 2010, Schicke wrote Gillett a letter in which he maintained his innocence and rhetorically asked why the State was out to get him. In this letter, Schicke never mentioned the county attorney's plea offer. But he did request Gillett talk to him about the case.

- After receiving Schicke's letter, Gillett arranged to have Schicke talk to him on a nonrecorded phone line from the jail. During this conversation, Schicke finally agreed to the county attorney's plea offer.

- As a result of Schicke's change of heart, Gillett wrote Assistant Attorney General Duncan on January 11, 2010, and informed him that Schicke would accept the plea offer relayed by the county attorney in her letter dated November 23, 2009.

- Assistant Attorney General Duncan did not accept the offer.

The judge then explained why Gillett's testimony was more credible than Schicke's testimony:

- Schicke and his family had bias, motive, and interest to testify in a way that could reduce Schicke's prison sentence.

7

- It was difficult to believe that if Schicke had told Gillett that he wanted to accept the plea offer on December 12, when the offer was still open, that Gillett would not have contacted the county attorney at that time to consummate the plea deal.

- Gillett's testimony was corroborated by his December 29 letter to Schicke where he asks Schicke to reconsider accepting the plea offer.

- Schicke's testimony was undercut by his own letter to Gillett dated January 6, which did not mention that he wanted to accept the plea offer.

- Gillett's letter to Assistant Attorney General Duncan on January 11 corroborates Gillett's testimony that Schicke did not accept the plea until after the first of January.

- Schicke's family members' testimony was not intentionally false, but rather 1 month off regarding the timing of when Schicke decided to accept the plea. Further, the conversations between Schicke and his family were a different matter than the conversations between Schicke and Gillett. The paper trail supporting Gillett's testimony had greater weight than the family testimony.

The court found that Schicke had failed to meet his burden to prove deficient performance on the part of Gillett and to prove prejudice.

*We list the law that controls our decision.*

After a full evidentiary hearing on a K.S.A. 60-1507 motion, the district court must issue findings of fact and conclusions of law concerning all issues presented. Supreme Court Rule 183(j) (2015 Kan. Ct. R. Annot. 271). An appellate court reviews the court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Appellate review of the district court's ultimate conclusions of law is de novo. *State v. Adams*, 297 Kan. 665, 669, 304 P.3d 311 (2013). The appellate court does not reweigh the evidence

8

or pass on the credibility of witnesses. *State v. Martinez*, 296 Kan. 482, 485, 293 P.3d 718 (2013).

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish:  (1) the performance of defense counsel was deficient under the totality of circumstances; and (2) prejudice, *i.e.*, that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882-83, 335 P.3d 1162 (2014), relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 3562, 82 L. Ed. 2d 864 (1984). Judicial scrutiny of counsel's performance is highly deferential. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

In *Missouri v. Frye*, 566 U.S. ___, 132 S. Ct. 1399, 1408, 182 L. Ed. 2d 379 (2012), the United States Supreme Court held that an attorney's failure to communicate a formal plea offer to a criminal defendant falls below an objective standard of reasonableness. To show prejudice when a plea offer has lapsed because of counsel's deficient performance, the defendant must demonstrate a reasonable probability that the defendant would have accepted the plea offer, the plea would have been entered, and the end result would have been more favorable to the defendant. 132 S. Ct. at 1409.

Here, unlike in *Frye*, both Schicke and Gillett agree that the plea offer was communicated. Rather, Schicke claims that Gillett failed to contact him again to get his decision on the plea offer before the offer expired. It is unnecessary for us to decide whether such conduct would constitute deficient performance. Because the district court made factual findings that Gillett and Schicke *did* discuss the plea offer again before it expired and that Schicke refused the offer, it is apparent that Gillett had told Schicke about the offer.

9

The district court's findings of fact were supported by substantial competent evidence. The district court found that Gillett and Schicke discussed the plea in detail prior to December 8, but that Schicke did not accept the offer. That finding was supported by Schicke's testimony and Gillett's testimony on direct examination. The court found that the deadline on the plea offer was extended to December 18. That finding was supported by Gillett's testimony that the county attorney agreed to extend the deadline. The court found that Gillett discussed the plea offer with Schicke again before the extended December 18 deadline and that Schicke was still unwilling to accept the plea. The district court also found that Schicke did not decide to accept the plea until after the first of January. Those findings were supported by Schicke's testimony that he met with Gillett sometime around December 12, and by Gillett's testimony that he visited Schicke between December 11 and 18 and that Schicke was not willing to take the plea. Also, the letter from Gillett to Schicke dated December 29, 2009, asking Schicke to reconsider accepting the plea offer supported the finding that Schicke refused the offer until early January.

The district court's findings of fact were sufficient to support its conclusions of law. If Gillett did meet with Schicke around December 12 and Schicke refused the plea offer, then Schicke was not denied the opportunity to accept the more favorable plea offer, as he contends. Therefore, he cannot prove deficient performance or prejudice.

The district court listed six reasons why it found Gillett's testimony more credible than Schicke's and his family members' testimony. Schicke makes several arguments that merely ask this court to reweigh the evidence and make credibility determinations, which we cannot do. See *Martinez*, 296 Kan. at 485.

Schicke contends that Gillett's performance was deficient because the only conversation between him and Gillett regarding the plea offer before December 8 occurred on November 24. Although the jail visitation log shows no visits from Gillett

10

after November 24, there was testimony that weekend visits were not logged. Schicke testified that Gillett visited him around December 12—on a weekend. And, the plea offer did not expire until December 18.

Schicke also contends that the district court arbitrarily ignored his family members' testimony in favor of the letters admitted by the State. However, the district court did consider the family members' testimony. The court found that the family members had bias, motive, and interest to testify in a way that would reduce Schicke's prison sentence, the family members were 1 month off with the timeline of when Schicke's change of heart occurred, and the paper trail supporting Gillett's testimony was more convincing. Again, this court cannot reweigh the evidence. See *Martinez*, 296 Kan. at 485.

Finally, Schicke argues that counsel bore the burden to communicate the formal plea offer to him and that Gillett never told him about the extension. But Gillett testified that he was sure he told Schicke that the offer was still open when he met with Schicke after December 8, though he did not recall it specifically. This is a credibility determination, which this court cannot make. See *Martinez*, 296 Kan. at 485.

With this record, we cannot say that the district court erred in holding that Schicke failed to meet his burden to prove Gillett's representation was deficient or that he was prejudiced. Thus, we affirm the denial of his K.S.A. 60-1507 motion.

*We grant the State's cross-appeal.*

After the district court ruled on Schicke's K.S.A. 60-1507 motion, Schicke filed a notice of appeal and a "motion for appeal bond." The State filed a response opposing the motion for appeal bond. The district court held a hearing on the motion at which the State did not appear. The district court set a supersedeas bond in the amount of $500,000 cash

11

or professional surety. The journal entry was filed on March 26, 2014. The district court ordered the Montgomery County Department of Corrections to release Schicke upon a $500,000 cash or professional surety "appeal bond." The State filed a notice of cross-appeal under K.S.A. 2015 Supp. 60-2103(h) of the district court's order setting a supersedeas bond. The record does not indicate whether Schicke posted the bond.

The district court had no jurisdiction to authorize the release of Schicke on an appeal bond after denying Schicke relief on his K.S.A. 60-1507 motion. K.S.A. 60-1507 actions are civil proceedings and are governed by the rules of civil procedure, to the extent applicable. Supreme Court Rule 183(a)(1)-(2) (2015 Kan. Ct. R. Annot. 271); *McHenry v. State*, 39 Kan. App. 2d 117, 119, 177 P.3d 981 (2008). Therefore, any criminal procedure that would allow a district court to release a defendant on bond after a conviction was inapplicable.

Neither K.S.A. 60-1507 nor Rule 183 permit the release of a prisoner on an appeal bond. Further, K.S.A. 2015 Supp. 60-2103(d), which allows a district court in a civil case to set a supersedeas bond, was also inapplicable here. K.S.A. 2015 Supp. 60-2103(d)(1) provides, in part, that when

> "an appellant entitled thereto desires a stay on appeal, such appellant may present to the district court for its approval a supersedeas bond which shall have such surety or sureties as the court requires. Subject to paragraph (2), the bond shall be conditioned for the satisfaction of the judgment in full together with costs, interest, and damages for delay, if for any reason the appeal is dismissed, or if the judgment is affirmed, and to satisfy in full such modification of the judgment such costs, interest, and damages as the appellate court may adjudge and award."

K.S.A. 2015 Supp. 60-2103(d)(1) allows a supersedeas bond to be set to stay a money judgment, judgment disposing of property pending appeal, or an order on a provisional remedy or injunction. It does not permit the release of a prisoner serving a sentence.

12

Moreover, if the provision were invoked to stay the district court's order denying Schicke's K.S.A. 60-1507 motion pending appeal, the stay would in no way affect Schicke's conviction and sentence in his criminal case. "A supersedeas is a suspension of the power of a court to issue an execution on the judgment or decree from which an appeal has been taken. . . . Supersedeas preserves the status quo of the case." *Smith v. Almonte*, 32 Kan. App. 2d 224, 226, 81 P.3d 457 (2003). The status quo prior to the district court's order in this case was Schicke being in prison serving his sentence.

The district court's jurisdiction over Schicke ended when it denied his K.S.A. 60-1507 motion.

We affirm the denial of Schicke's K.S.A. 60-1507 motion for habeas corpus relief and vacate the district court's stay of execution of Schicke's prison sentence and its order setting a supersedeas bond.

Affirmed in part and vacated in part.