NOT DESIGNATED FOR PUBLICATION

No. 118,024

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

JAMES DARIN STEWART,
*Appellee*.

MEMORANDUM OPINION

Appeal from Saline District Court; PATRICK H. THOMPSON, judge. Opinion filed March 16, 2018. Reversed and remanded.

*W. Brad Sutton*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*C. Charles Ault-Duell*, of Norton, Wasserman, Jones & Kelly, L.L.C., of Salina, for appellee.

Before BUSER, P.J., PIERRON and LEBEN, JJ.

PER CURIAM: The district court granted James Darin Stewart's motion to suppress evidence resulting from an illegal search and seizure. The court reasoned that Deputy Heinrich exceeded the scope of the public safety contact by conducting an investigation for driving under the influence (DUI). The State filed an interlocutory appeal of the district court's suppression of evidence. We reverse and remand.

On Saturday, February 11, 2017, Shaun Bruce, head wrestling coach at Southeast of Saline High School, arrived at the school between 5 a.m. and 5:30 a.m. He saw a

sports utility vehicle (SUV) parked in the front of the district office, near the entrance of the parking lot, with the driver's side door wide open. When he approached the SUV, he noticed the heat was on and Stewart was sprawled out in the driver's seat with the seat reclined. Stewart appeared to be sleeping. Bruce did not make contact but observed Stewart briefly to make sure he was breathing. When he was satisfied that Stewart was breathing, Bruce went into the high school.

At approximately 6 a.m., Wayne Sager, the assistant principal and athletic director, arrived at the school. Bruce and Sager were there to prepare for a wrestling tournament. In the parking lot, he saw the SUV with the door wide open. Sager did not check on Stewart but called law enforcement after speaking with Bruce. He informed dispatch that there was a drunk person in the parking lot and he was concerned because there was a forensic meet soon. He requested an officer check out the situation. When Sager looked back outside, he thought the vehicle had left but realized it had been moved approximately 70-100 yards to a new parking spot. By that time, law enforcement was there and Sager went out to let the deputy know that he was the reporting party.

Deputy Rick Heinrich arrived at the school at approximately 6:18 a.m. Dispatch had reported an intoxicated person inside a vehicle in the high school parking lot and provided a description of the vehicle and its location within the parking lot. Heinrich found an SUV matching the description and tag number dispatched, but it was parked approximately 200 feet from the reported location. Stewart was the only occupant of the SUV. Heinrich smelled the odor of alcoholic beverages in the SUV immediately upon making contact with Stewart. Stewart told Heinrich that he had been there for a while and he was resting before driving home. Heinrich asked Stewart for his driver's license. It took Stewart a "little bit" to produce it because he looked through his wallet and struggled to get only his license. He handed Heinrich additional cards along with his driver's license.

2

Deputy Heinrich asked Stewart to step out of the vehicle. Stewart struggled to unlock the door, and when he was finally able to get out, he slammed the door behind him. Heinrich proceeded with a DUI investigation. Before administering the standardized field sobriety tests, Heinrich asked Stewart if he had any physical conditions or injuries or if he was seeing a doctor. He then asked if he had any problems being able to perform the tests. Stewart responded, "No," to each question. Heinrich administered the walk-and-turn test and the one-leg stand test with Stewart. When he was preparing to administer the preliminary breath test, Sager approached to speak with Heinrich. Sager introduced himself as the reporting party and confirmed that the SUV was not where it had been parked when he arrived. He reported that the SUV had been closer to the entrance of the parking lot earlier. Sager further informed Heinrich that there had been one person in the SUV, who he thought was intoxicated, and the door was open and loud music was coming from the vehicle. Heinrich requested the surveillance videos of the parking lot from Sager. The videos were provided by the School Resource Officer, Deputy Martinez, on February 26, 2017. Throughout the DUI investigation, Stewart was not free to leave and Heinrich or Deputy Appel retained his driver's license.

On May 5, 2017, Stewart filed a motion to suppress, alleging that the DUI investigation was unconstitutional because Deputy Heinrich lacked reasonable suspicion to extend the public safety stop into an investigatory seizure. At the suppression hearing on June 29, 2017, the district court found that Heinrich was dispatched to the school parking lot for an intoxicated person in a vehicle. Heinrich did not see the vehicle move, though it was not in the same location as reported. When he approached the vehicle, it was running and there was only one occupant, Stewart, in the driver's seat. Heinrich asked Stewart for identification and had him step out of the vehicle. He proceeded to conduct a DUI investigation based on the odor of alcohol and indicators he observed while speaking with Stewart. Because Heinrich did not witness Stewart operating the vehicle, this was not a traffic stop. The State showed that Heinrich had objective, specific, and articulable facts that Stewart may have been in peril or in need of assistance.

3

The district court found that the public safety exception applied and Heinrich had reason to approach the vehicle.

The district court found, however, that once Deputy Heinrich determined Stewart did not need assistance, any further actions constituted a seizure under the Fourth Amendment to the United States Constitution. Heinrich did not observe the vehicle being operated; he knew that Stewart was above the legal drinking age; and there were no concerns of trespassing, disorderly conduct, or any other traffic violations. The district court used the definition of "operate" provided in *State v. Darrow*, 304 Kan. 710, 374 P.3d 673 (2016), to conclude that the fact that the vehicle was in a different location was not sufficient to establish that Stewart moved it or attempted to move it. The district court found that Heinrich's DUI investigation exceeded the scope of the public safety stop and evidence obtained as a result was suppressed. The State appeals.

We must first determine whether we have subject matter jurisdiction.

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. See *State v. Smith*, 304 Kan. 916, 919, 377 P.3d 414 (2016). The State's statutory authority to appeal in a criminal case is limited by statute. The appellate court has jurisdiction to entertain a State's appeal only if it is taken within the time limitations and in the manner prescribed by the applicable statutes. *State v. Sales*, 290 Kan. 130, 134, 224 P.3d 546 (2010). This court only obtains jurisdiction over the rulings identified in the notice of appeal. *State v. Garza*, 295 Kan. 326, 329, 286 P.3d 554 (2012).

Stewart asserts we do not have jurisdiction because the original notice of appeal by the State was so confusing or imprecise that an appellate court must search the record to determine the basis for the State's appeal and the amended notice of appeal was untimely. The motion to suppress was heard on June 29, 2017. The State filed a notice of

4

interlocutory appeal on July 11, 2017. The district court entered the journal entry on July 12, 2017, and the State filed an amended notice of appeal on July 26, 2017.

The authority for the appeal is found in K.S.A. 2017 Supp. 22-3603, which gives the State the right to an interlocutory appeal of a district court's suppression of evidence. The notice of appeal is to be filed "within 14 days after *entry* of the order." (Emphasis added.) K.S.A. 2017 Supp. 22-3603. Though the district court pronounced its decision from the bench on June 29, 2017, the judgment was not entered until July 12, 2017, which began the 14 days for the State to file the notice of appeal. The amended notice of appeal was filed on the 14th day after entry of the order. The notice of appeal was sufficient to give Stewart notice about what was being appealed, and it was timely filed. We have jurisdiction.

Even if the State had not amended the original notice of appeal, it was not so erroneous that a dismissal would have been warranted. In the original notice of appeal, the State erred by claiming appellate authority under K.S.A. 2017 Supp. 22-3602(d), which provides the State the right to appeal cases heard by a district magistrate judge to a district judge. However, the State also properly included K.S.A. 2017 Supp. 22-3603, which permits interlocutory appeals by the State based on suppression of evidence.

In support of his argument, Stewart relies on *State v. Kerby*, 259 Kan. 104, 910 P.2d 836 (1996), but fails to address the fact that, though the only statute in the notice of appeal was incorrect, the court did not simply dismiss the case. Instead, the Kansas Supreme Court issued a show-cause order, allowing the State to fix the issue. The State did not attempt to amend its notice of appeal and did not timely respond to the show-cause order. The State's failure to timely address the issue even after being given the opportunity led to dismissal for want of jurisdiction, not the erroneous notice of appeal. 259 Kan. at 105-06.

5

Stewart further relies on *State v. G.W.A.*, 258 Kan. 703, 906 P.2d 657 (1995), as *Kerby*'s predecessor. In *G.W.A.*, the State's notice of appeal provided that it was appealing from a judgment of acquittal, which is not legally permissible, rather than a question reserved. 258 Kan. at 707. The *G.W.A.* court found that the State's notice of appeal was limited and specific and that it could not be read broadly enough to include an appeal on a question reserved. 258 Kan. at 707.

A case not provided by either party is on point: *State v. Huff*, 278 Kan. 214, 92 P.3d 604 (2004). There, the State included the incorrect statute on the notice of appeal, but it briefed the correct statute. The *Huff* court found that the State's citation of the incorrect statute was sufficient to preserve the right to appeal. Because the State included the date of the district court's decision in the notice of appeal, it was general enough to include the basis of the order being appealed and it put the defendant on notice as to what was being appealed. 278 Kan. at 219.

Here, unlike *Kerby* and *G.W.A.*, although the State included an incorrect statute, it also included the correct statute for appellate authority. The State also included the date of the district court's decision, as in *Huff*. The original notice of appeal provided the basis of the order appealed and was sufficient to put Stewart on notice as to what was being appealed. The error was not so confusing that it would warrant denying the State its appeal. We have subject matter jurisdiction to hear this appeal.

On appeal, the State argues the district court erred in granting Stewart's motion to suppress all evidence obtained after the completion of the safety check.

The standard of review of a district court's decision on a motion to suppress is bifurcated. Appellate courts apply a substantial competent evidence standard to the factual underpinnings, and the ultimate legal conclusions are reviewed de novo. *State v. Mattox*, 305 Kan. 1015, 1035, 390 P.3d 514 (2017). The substantial competent evidence

6

standard analyzes whether a reasonable person could accept the evidence as adequate to support the conclusion. 305 Kan. at 1035. When the material facts in a district court's determination on a motion to suppress are not in dispute, the question of whether to suppress is a question of law, which the appellate court reviews de novo. *State v. Martinez*, 296 Kan. 482, 485, 293 P.3d 718 (2013). Here, the factual basis for the district court's determination is uncontroverted. The issue is a matter of whether the facts amounted to reasonable suspicion that Stewart operated the vehicle while under the influence.

The State contends the district court erred in suppressing evidence because the information provided by dispatch along with Heinrich's observations were sufficient to proceed with a DUI investigation. Stewart claims that because the *Darrow* court determined that "operate" is synonymous with "drive" and Heinrich did not observe him driving or attempting to drive the vehicle, Heinrich could not have reasonably suspected that Stewart operated the vehicle, and so could not extend the public safety contact into a criminal investigation. Here, the district court has already determined that the public safety exception applied so Heinrich had reason to approach the SUV.

The Fourth Amendment prohibits unreasonable searches and seizures. *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010). Whether a seizure has occurred depends on the type of contact between law enforcement and a citizen: consensual encounters, investigative detentions, public safety stops, and arrests. *State v. Reiss*, 299 Kan. 291, 297, 326 P.3d 367 (2014). A consensual encounter with law enforcement is not a seizure; the other three types are. 299 Kan. at 297. Here, the district court has determined that the encounter began as a public safety stop and transitioned into an investigative detention, both of which are seizures.

The purpose of a public safety stop must be carefully tailored to the justification for the stop and must not last longer than necessary to fulfill its purpose. *State v.*

7

*Gonzales*, 36 Kan. App. 2d 446, 455, 141 P.3d 501 (2006) (quoting *United States v. Garner*, 416 F.3d 1208, 1213 [10th Cir. 2005]). In *Reiss*, the seizure began as a public safety encounter for the safety of the officer. The *Reiss* court determined that once the officer had resolved his safety concerns, the justification for the initial seizure, he began an investigative detention when he asked for Reiss' driver's license and registration or proof of insurance. 299 Kan. at 303.

Here, the public safety stop was completed when Heinrich determined that Stewart did not need assistance. Heinrich began the encounter by saying, "Hello. Is everything alright here?" Stewart replied that he was taking a nap. Heinrich followed up by asking if Stewart was aware of his location, and he replied that he was at a school. At that point, Heinrich was aware that Stewart was not in need of assistance and that he was cognizant as to his surroundings. The justification for the public safety encounter had been completed. At that point, though, Heinrich asked if Stewart had any ID on him, signifying the start of the investigatory detention.

In *Reiss*, the officer conducted an investigatory detention after the termination of the public safety stop and the court stated that for the permissibility of the stop to continue, the officer needed reasonable suspicion. 299 Kan. at 303. According to K.S.A. 22-2402(1), law enforcement may stop individuals whom the officer reasonably suspects is committing, has committed, or is about to commit a crime. "Reasonable suspicion is a much lower standard than probable cause and may be established with less reliable information." *State v. Martinez*, 296 Kan. 482, 487, 293 P.3d 718 (2013). Reasonable suspicion depends on information the officer possesses, and both the amount and reliability of the information are considered when determining whether the officer had reasonable suspicion. 296 Kan. at 487 (citing *State v. Parker*, 282 Kan. 584, 594, 147 P.3d 115 [2006]). Reasonableness depends on the totality of the circumstances from the perspective of a trained law enforcement officer, and the circumstances must be observed in light of common sense and ordinary human experience. *Martinez*, 296 Kan. at 487.

8

The court's determination is made with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances while considering that reasonable suspicion is a minimum level of objective justification, considerably less than proof of wrongdoing by a preponderance of the evidence. 296 Kan. at 487 (quoting *State v. DeMarco*, 263 Kan. 727, 735, 952 P.2d 1276 [1998]). The *Reiss* court found that the officer did not have reasonable suspicion to extend the public safety stop because it was not until after the officer began the investigatory detention, by requesting Reiss' driver's license and registration or proof of insurance, that he recognized any indicators of intoxication. 299 Kan. at 303. The officer must have reasonable suspicion prior to beginning an investigatory detention.

Here, the district court appears to have held Heinrich to a higher legal standard than was required to proceed with the DUI investigation. Reasonable suspicion of a crime does not require an officer to personally witness every element. Heinrich had been dispatched to the high school parking lot to check on an intoxicated person. He recognized that the vehicle had moved since the call to dispatch. The time between the call and Heinrich's arrival was approximately 18 minutes. Unlike in *Reiss*, Heinrich immediately detected the odor of alcoholic beverages when he made contact with Stewart.

Although *Darrow*, 304 Kan. 710, clarified that the definition of "'operate'" is to "'drive'" and "taking actual physical control" is insufficient, it did not remove the officer's ability to draw reasonable inferences as to how the vehicle moved within the parking lot. 304 Kan. at 714, 716. In *Darrow*, the State conceded that Darrow did not drive the vehicle to the location where the officer contacted her, so the only "attempt to operate" was her "fumbling with the gear shift lever, but the transmission remained in park." 304 Kan. at 717-18. In making its determination on the sufficiency of the evidence, the court considered "all of the facts and circumstances, including the *reasonable inferences* that can be drawn therefrom." (Emphasis added.) 304 Kan. at 715-16. The court further

9

recognized that circumstantial evidence is sufficient to support a conviction of even the gravest offense. 304 Kan. at 716.

Here, the State is claiming that Stewart actually drove the vehicle, not like in *Darrow*, where the State agreed Darrow did not drive the vehicle. The State's claim fits within *Darrow*'s narrowed definition of "operate." Further, *Darrow* does not prevent consideration of the reasonable inference that Stewart moved the vehicle in the 18 minutes between Sager's call and Deputy Heinrich's arrival at the school. In fact, the *Darrow* court considered reasonable inferences when determining that fumbling with the gear shift was sufficient to be an attempt to operate the vehicle. 304 Kan. at 718-19. Here, Bruce, Sager, and Heinrich all observed Stewart in the driver's seat with no other occupants. Sager provided dispatch with a sufficient description of the vehicle's location that Heinrich was able to recognize that it had been moved. Confirmation with Sager was not necessary because it was obvious. The reasonable inference that Stewart operated the vehicle and the indicators of his intoxication, when viewed in light of common sense and ordinary human experience, were sufficient to meet the low standard of reasonable suspicion required for Heinrich to proceed with the DUI investigation.

The district court erred by applying too high of a legal standard when Heinrich had reasonable suspicion that was sufficient to proceed with the DUI investigation. Caselaw does not require Heinrich to observe the operation of the vehicle to proceed with the investigation when all of the facts and reasonable inferences point to Stewart operating the vehicle within the parking lot.

We reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.