NOT DESIGNATED FOR PUBLICATION

No. 121,008

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ERNEST L. TAYLOR,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; C. WILLIAM OSSMANN, judge. Opinion filed August 14, 2020. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant, and *Ernest L. Taylor*, appellant pro se.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney at law, for appellee.

Before BUSER, P.J., HILL and WARNER, JJ.

PER CURIAM: To win this collateral attack on his convictions, Ernest L. Taylor had to show that his lawyer's performance was legally deficient and that he was prejudiced by that performance. At trial, his lawyer failed to object to the admission of some evidence that he had asked the court to suppress. Thus, the issue was not preserved for his direct appeal. But he has failed to show us that he would have prevailed in his direct appeal if the issue had been preserved. We hold that Taylor has no right to relief because he has not shown prejudice.

1

In his uncounseled brief that he submitted to this court, Taylor raises several other issues. None of them are persuasive, and we affirm the court's dismissal of his K.S.A. 60-1507 motion.

Taylor is serving a prison sentence for three felony crimes—aggravated robbery, aggravated burglary, and obstructing official duty. His convictions were affirmed by this court in *State v. Taylor*, No. 101,451, 2010 WL 2245599 (Kan. App. 2010) (unpublished opinion). Full details of Taylor's crime are given in that opinion.

To provide a context, we summarize the details. In 2007, a young woman in Topeka discovered a man standing in her bedroom about 10 to 12 feet from her bed. The man was hunched over and had his hand under his shirt. It looked like he had a gun. He demanded money or he would shoot her. She yelled at him to get out and told him that she did not have a wallet. The intruder fled and snatched a jar of nickels and dimes off a shelf on his way out.

When she called the police, she described the intruder as a black man, 5′ 8″ to 5′ 10″, weighing 170 to 190 pounds, with short hair and a mustache, who was wearing a white t-shirt with some writing on the front of it.

Two sheriff's deputies who were in the area received a radio dispatch describing the intruder as a black male, with short hair and a mustache, wearing a white shirt. The deputy who was driving immediately headed the unmarked police car towards the victim's house. While en route, the officers spotted a black male with short hair and a white shirt about 3 blocks from the victim's house.

The deputies, who were dressed in street clothes, drove past the man, turned their car around, and parked the car. They approached the man on foot. Following from behind, one of the officers asked the man if he could stop and talk with him. The man

2

looked back and continued walking. The man did not stop until one of the deputies used a taser on the man. He was later identified as Taylor.

The deputies arrested Taylor. When he was searched, they discovered $41.05 in coins on his person. When detectives later showed the victim a photo array that included Taylor's photo, she pointed him out after about 30 seconds and said, "that looks like him."

Later, the victim went to the jail where she watched video of Taylor in an interview room. Even though she could not see his face, she could hear his voice. She then told the detectives that she was "120 percent sure" that Taylor was the intruder.

Before trial, the defense moved to suppress evidence. Taylor argued that the court should suppress all evidence related to the search of his person because the officers used excessive force when they approached him. Taylor also argued the officers lacked reasonable suspicion to begin the detention, but he did not argue that the officers lacked reasonable suspicion because he did not fit the description given to the 911 operator by the victim. The district court held a hearing on the motion, and Taylor argued he did not fit the description given by the victim. The court denied the motion to suppress. The defense did not object when the evidence was offered at trial.

Later, in his direct appeal, Taylor brought up the lack of reasonable suspicion. But this court did not address the issue because Taylor's trial counsel failed to make a timely and specific objection to the evidence at trial. 2010 WL 2245599, at *2-3.

Following his direct appeal, Taylor filed a pro se K.S.A. 60-1507 motion. Over the next three years, Taylor filed many pro se motions. Eventually, his counsel filed a consolidated motion for relief that narrowed the allegations to ineffective assistance of his trial and appellate counsel. Taylor alleged his trial counsel was ineffective for failing to preserve his motion to suppress for appellate review.

3

After a preliminary hearing, the district court denied Taylor's motion. The district court found that "[w]hile a timely objection would have preserved the issue for appeal, it is extremely doubtful [this court], in reviewing the same facts and testimony presented at trial, would have reached a different result than that of the trial court." The district court found Taylor failed to meet his burden of proving ineffective assistance of trial and appellate counsel.

*We must follow these rules.*

If a district court holds a preliminary hearing where it admits limited evidence and considers arguments of counsel, as here, this court must defer to any factual findings made by the district court. We look to see if the findings are supported by substantial competent evidence and whether those findings are enough to support its conclusions of law. See *Bellamy v. State*, 285 Kan. 346, 354, 172 P.3d 10 (2007). Our review over the district court's conclusions of law and its decision to grant or deny the K.S.A. 60-1507 motion is unlimited. *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018).

To be entitled to relief under K.S.A. 60-1507, the movant must establish by a preponderance of the evidence either:

- the judgment was rendered without jurisdiction;
- the sentence imposed was not authorized by law or is otherwise open to collateral attack; or
- there has been such a denial or infringement of the constitutional rights of the prisoner that it renders the judgment vulnerable to collateral attack.

K.S.A. 2019 Supp. 60-1507(b); Supreme Court Rule 183(g) (2020 Kan. S. Ct. R. 223).

Here, Taylor claims that his lawyer's deficient performance is an infringement of his constitutional rights.

4

To avoid the summary denial of a motion brought under K.S.A. 60-1507, a movant bears the burden of establishing entitlement to an evidentiary hearing. To meet this burden, a movant's contentions must be more than conclusory, and either the movant must set forth an evidentiary basis to support those contentions or the basis must be evident from the record. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

Taylor argues his constitutional right to the assistance of counsel was violated because his lawyer was ineffective for failing to preserve his motion to suppress evidence by objecting to the evidence at trial. To prevail on a claim of ineffective assistance of trial counsel, Taylor must establish:

- that the performance of defense counsel was deficient under all of the circumstances; and
- prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance.

See *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019).

We are cautious when addressing such questions. When reviewing claims of ineffective assistance of counsel, judicial scrutiny must be highly deferential and requires consideration of all the evidence before the judge. And in considering deficiency, "there is a strong presumption counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability—that is, a probability sufficient to undermine confidence in the outcome. See *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

5

This failure to show the outcome of the appeal would have been different is where Taylor's argument collapses. Even if we assume that his counsel's performance was deficient, he has failed to prove the issue would have been successful on appeal.

*Taylor claims he did not match the description of the robber given by the victim and the officers had no reasonable suspicion to stop him.*

The point Taylor stresses is that he is far heavier than the description of the robber given by the victim. According to the arrest report, Taylor weighed 260 pounds when he was arrested, and the victim described the intruder as weighing between 170 to 190 pounds. But the officers had more to consider than just a physical description of the intruder. We must look at all of the circumstances.

Here, the dispatcher put out a call about the crime describing the suspect as a black male with short hair and a mustache, who was around 6' tall and weighed 170 to 190 pounds. Dispatch also described the suspect as wearing dark pants or jeans and a white t-shirt with writing on it. The officers testified that they knew the suspect could be armed, and they were aware of the location of the crime. There is more.

Around two to three minutes after receiving the physical description of the suspect, the officers saw Taylor walking a few blocks away from the crime scene. Taylor was the only pedestrian the officers saw in the area. Together with the time and location of the crime, the officers believed Taylor matched the description of the suspect. Even though Taylor had long hair at the time, the officers testified that his hair appeared short because it was pulled back into a ponytail.

Before contacting Taylor, the officers noticed he was behaving suspiciously. The officers testified that while they were watching Taylor, he was looking back over his shoulder and looking around while walking. Taylor was also sweating through his

6

clothes. The officers thought this was suspicious because it was around 76 degrees that night.

Reasonable suspicion depends on *all* of the circumstances and what is reasonable depends on all of the circumstances in the view of a trained law enforcement officer. Kansas courts have determined that reasonable suspicion depends on the information possessed, its degree of reliability, and both the quantity and quality of information. *State v. Martinez*, 296 Kan. 482, 487, 293 P.3d 718 (2013).

The Kansas Supreme Court has consistently held that when deciding if there is reasonable suspicion, a court must look at the big picture. A court must

> "'judge the officer's conduct in light of common sense and ordinary human experience. "Our task . . . is not to pigeonhole each purported fact as either consistent with innocent travel or manifestly suspicious," but to determine whether the totality of the circumstances justify the detention. We make our determination with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances, remembering that reasonable suspicion represents a "minimum level of objective justification" which is "considerably less than proof of wrongdoing by a preponderance of the evidence."[Citations omitted.]'" *State v. DeMarco*, 263 Kan. 727, 735, 952 P.2d 1276 (1998).

Following this reasoning, when we are deciding if there was reasonable suspicion here, we must look at the big picture.

In an attempt to narrow our view, Taylor cites *State v. Anguiano*, 37 Kan. App. 2d 202, 151 P.3d 857 (2007), for support. In *Anguiano*, a panel of this court found that the officer who stopped the defendant "had no particularized and objective basis for suspecting Anguiano was involved in criminal activity" because the only description given to the officer was that the suspect was a Hispanic man who wore a coat and "dark-

7

type green" pants. 37 Kan. App. 2d at 207. That description is far more generic than the one given here. Besides, the officers did not rely only on the description given by the victim.

When we consider the big picture here, the officers had reasonable suspicion to stop Taylor and investigate whether he was involved in the robbery. Even though there were some discrepancies between the description given by the dispatcher and Taylor's appearance, other facts must be considered. Taylor was a black male with a mustache wearing a white shirt and dark pants, and he was near the crime scene and acting suspiciously two to three minutes after the victim's call to the police. Taylor's case can be distinguished from *Anguiano* because the officers here relied on more than a generic description about the suspect's appearance.

We hold there is no reasonable probability that Taylor's motion would have been successful on direct appeal even if his trial counsel had preserved the issue. Thus, any deficient performance by Taylor's trial counsel did not lead to prejudice because there is very little likelihood that this court would have reversed the suppression ruling on appeal. No evidentiary hearing was warranted on Taylor's claim of ineffective assistance of counsel. The district court properly denied the claim without a hearing. We turn now to the issues raised by Taylor in his uncounseled brief.

*The supplemental issues raised by Taylor do not give us reasons to reverse.*

In several of the issues brought by Taylor, he argues that his speedy trial rights were violated because he faced a competency evaluation that he did not want. Put another way, his counsel—who he contends was standby counsel—had no authority to request a competency evaluation.

On direct appeal, Taylor argued that his counsel was ineffective for requesting a competency hearing that led to a violation of his speedy trial rights. In rejecting this claim, this court found that his counsel was not deficient because "there was evidence supporting a reasonable belief that Taylor was in need of a competency evaluation because he was refusing to assist in his own defense." 2010 WL 2245599, at *7.

But more importantly, the court found that Taylor's claim was "based on a false premise as to prejudice" because the State was still required to bring him to trial within the statutory period, holding: "In other words, Taylor suffered no actual prejudice by reason of the competency evaluation; he was free to assert and demand compliance with the speedy trial deadline at all times." 2010 WL 2245599, at *7.

Because this court has already ruled that the competency evaluation did not violate Taylor's speedy trial rights and it was not ineffective assistance of counsel to request an evaluation, res judicata bars our reconsideration of Taylor's claims in two of his issues. See *Salary*, 309 Kan. at 482.

Next, it appears that Taylor argues that his competency hearing was erroneous because he objected to it. In Taylor's direct appeal, this court noted that Taylor "adamantly and continually objected" to his counsel's motion for a competency evaluation. 2010 WL 2245599, at *6. This court determined it was reasonable for Taylor's counsel to request, and for the district court to grant, a competency evaluation based on Taylor's behavior. Because this court determined that the competency evaluation was appropriate under the circumstances, this issue is barred by res judicata.

But even if we are misconstruing his claim, and it is not identical to the claim decided on direct appeal, he still loses. It could have been raised in Taylor's direct appeal and it has been waived. See *Salary*, 309 Kan. at 482.

9

Next, Taylor appears to argue that his appellate counsel was ineffective for failing to argue that he was pro se and therefore his standby counsel had no authority to request a competency evaluation. As noted by the State, Taylor failed to cite to the record on appeal to establish his pro se status. The district court, in considering Taylor's K.S.A. 60-1507 motion, found Taylor was not pro se when his counsel requested the competency evaluation.

In making that finding, the district court relied on a pretrial motions hearing where it ordered Taylor's counsel to remain as his defense counsel—not standby counsel—because Taylor could not decide whether he wanted to represent himself. This means that the district court's factual finding is supported by substantial competent evidence. Because Taylor was not pro se when the competency evaluation was ordered, it was not error for the district court to deny Taylor an evidentiary hearing on this claim.

Finally, Taylor brings an issue that he did not raise in the district court in this K.S.A. 60-1507 motion. He contends that his trial counsel was ineffective for failing to request a jury instruction regarding eyewitness identification. In fact, he contends the identification should have been suppressed. We hold this issue is also barred by res judicata.

Taylor raised this issue in his direct appeal, and this court determined that there was not "any serious question about the reliability of the identification." 2010 WL 2245599, at *5. The panel was impressed by the timing and certainty of the victim's identification:

> "The victim had 3 to 5 minutes to view her intruder, she had an unobstructed view of the front of the intruder's face, and she provided a relatively consistent and accurate description—albeit somewhat erroneous in estimations of weight and height. She consistently identified Taylor both in a photographic line-up from among five other

persons, and she clearly confirmed her identification after hearing Taylor's voice at the police station and again after seeing his face. There are [*sic*] nothing about these circumstances that raises a serious question about the reliability of the victim's identification of Taylor." 2010 WL 2245599, at *5.

Even more, the panel determined that because Taylor was apprehended near the victim's residence with the nickels and dimes stolen from the victim, the evidence "dispel[led] any possibility that the additional eyewitness instruction would have resulted in a different verdict." 2010 WL 2245599, at *5.

In trying to strengthen his argument, Taylor also argues the pretrial identification procedures were unconstitutional. Although this court determined this claim was not preserved for appellate review on direct appeal, it found that "[e]ven if [the panel] were to address these claims on their merits . . . any perceived illegality in the line-up procedures was clearly harmless." 2010 WL 2245599, at * 4. The court, again, reasoned that the change found on Taylor's person was a "damning discovery [that] certainly blunts—if not obliterates—Taylor's challenge to the identification procedures and related testimony." 2010 WL 2245599, at *4.

This ruling means that res judicata prevents us from reconsideration of the claim. Taylor has not established that he is entitled to relief.

Affirmed.