NOT DESIGNATED FOR PUBLICATION

No. 121,467

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AARON DAVID CASH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; ROBERT J. WONNELL, judge. Opinion filed March 27, 2020.
Affirmed.

*Branden A. Bell*, of Morgan Pilate LLC, of Kansas City, Missouri, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., BUSER, J., and BURGESS, S.J.

PER CURIAM: Aaron David Cash appeals the district court's denial of his motion to suppress. Finding no error, we affirm.

*Factual and Procedural Background*

As a result of a 2018 traffic stop, the State charged Cash with possession of methamphetamine, possession of diazepam, and possession of drug paraphernalia. Cash moved to suppress the evidence seized during the traffic stop, arguing the investigating

officer violated his Fourth Amendment right to be free from unreasonable search and seizures.

At the hearing on the motion, the sole witness was Officer Caitlin Demarest. She testified she saw a van driving without a registration decal. When she ran the license plate number, dispatch replied that the plate was registered to a Chevrolet "Venture." But Demarest mistakenly heard "Avenger," which led her to believe the license plate did not match the van. Believing the van had committed two infractions, she stopped the van.

As she approached the van, Demarest saw a clear plastic baggie and a Crown Royal bag hanging out of a partially opened safe on the van's floorboard. The van had no backseat. She could not see what was inside the plastic baggie. Demarest testified that in her training and experience, more often than not, Crown Royal bags contain drug paraphernalia.

Cash was alone in the van. He explained that he did not own the van and told Demarest the owner's name. He tried to find the van's registration and insurance, but had trouble locating it. While waiting for Cash to find the registration, Demarest shined her flashlight at the safe. She then asked Cash to open it. Cash complied. Demarest then saw orange hypodermic needle tops and syringes inside the safe. Demarest asked Cash to leave the safe open, but he slammed it shut, exclaiming, "I think there's a pipe in there." Demarest then asked Cash to step out of the van and he did so. She searched the van and found drugs and drug paraphernalia. Later, Demarest discovered Cash had an outstanding warrant.

After the State charged Cash, he moved to suppress the evidence, arguing that Demarest lacked reasonable suspicion of a crime as was necessary to extend the scope of the traffic stop. The State countered that Demarest had seen the plastic baggie and the Crown Royal bag in plain view while conducting a valid traffic stop. The State also

2

argued that Demarest had probable cause to search the vehicle after she saw the contents of the opened safe. The district court ruled:

> "During that time, the Officer, from a standpoint that she had a lawful right to be, looks into the back seat and sees this partially opened safe. From what she sees, a plastic baggie and a purple Crown Royal bag, both of which she identified based upon training and experience, that she associates with being drug paraphernalia, specifically that she has on numerous occasions found drug paraphernalia in a Crown Royal bag. She then asks the Defendant to open up the safe further, which he does, after which she sees needle caps and syringes. He then slams down the top of the safe and says, 'I think there's is a pipe in there.' Based upon all of that, at that point and time, the Officer had probable cause to search that vehicle for drugs and drug paraphernalia. The Court does not find that this stop was unlawfully extended. As the Defendant is looking through his papers trying to locate the insurance and other things that she asked for, the Officer asked for, the Officer simply shone a light in the back seat of the vehicle and she had an absolute right to do. At that point she finds additional evidence, giving her reasonable suspicion to continue that stop and extend that stop to investigate what she believes is now a drug violation. So, I do not believe that she was limited to the traffic violation. Once she saw those item in the safe and she saw them from a vantage point, that she had a legal right to be.
>
> . . . .
>
> "But the Court finds there was reasonable suspicion to stop the car. And that subsequent to her stop, she developed reasonable suspicion to believe there was drug issues going on and search the car pursuant to probable cause in the automobile exception based upon what she saw in the vehicle and the Defendant's statement."

The district court denied Cash's motion to suppress.

After a bench trial on stipulated facts, the district court found Cash guilty of possession of methamphetamine, possession of diazepam, and possession of drug paraphernalia. It sentenced him to 11 months in prison then suspended that sentence and imposed one year of probation.

3

Cash timely appeals, challenging only the denial of his motion to suppress.

*Did the District Court Err in Denying Cash's Motion to Suppress?*

On appeal, Cash does not challenge the initial stop. Rather, Cash argues only that Demarest unlawfully extended the traffic stop by asking him to open the safe without having reasonable suspicion of a crime.

*Standard of Review*

Our standard of review for a district court's decision on a motion to suppress has two components. We review the district court's factual findings to determine whether they are supported by substantial competent evidence. In reviewing the factual findings, we do not reweigh the evidence or assess the credibility of witnesses. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). We review the ultimate legal conclusion, however, de novo. Whether reasonable suspicion exists is a question of law. In reviewing an officer's belief of reasonable suspicion, we determine whether the totality of the circumstances justifies the detention. *State v. Walker*, 292 Kan. 1, Syl. ¶¶ 5, 6, 251 P.3d 618 (2011).

*Analysis*

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." See also Kan. Const. Bill of Rights, § 15. A traffic stop is considered a seizure of the driver. *State v. Thompson*, 284 Kan. 763, 773, 166 P.3d 1015 (2007). To comply with the Fourth Amendment, the officer conducting the stop "must '"have a reasonable and articulable suspicion, based on fact, that the person stopped has committed, is committing, or is about to commit a crime."'" 284 Kan. at 773.

4

When, as here, a defendant claims a stop violated the Fourth Amendment, the State bears the burden of proof to the trial court that the seizure was lawful. *State v. Schooler*, 308 Kan. 333, 344, 419 P.3d 1164 (2018). To show the reasonableness of an investigative detention, the State must show: (1) that the officer's stop was justified at its inception, and (2) that the officer's actions during the detention were reasonably related in scope to the circumstances justifying the initial interference. *State v. Mitchell*, 265 Kan. 238, 241, 960 P.2d 200 (1998). Cash challenges only the second part of this test.

*Extension of Traffic Stop*

Cash first argues that Demarest's inquiry about the safe was unrelated to the traffic stop and measurably extended its length. See *Rodriguez v. United States*, 575 U.S. 348, 354, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015) ("Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."); *State v. Jimenez*, 308 Kan. 315, 326, 420 P.3d 464 (2018) ("[A]ny traffic stop extension without reasonable suspicion or consent—by even a *de minimis* length of time—amounts to an unreasonable seizure when the delay is based on anything but the articulated components of the stop's mission."). The State does not brief this issue. Rather, it appears to concede that the officer's questions about the safe were unrelated to Cash's traffic infractions and extended the length of the traffic stop. We thus consider only whether Demarest had reasonable suspicion to do so. Although consent could justify such an extension, the State does not argue consent here.

*Reasonable Suspicion*

Our Supreme Court has recently summarized the governing law on reasonable suspicion, emphasizing the totality of circumstances test:

"Reasonable suspicion is a lower standard than probable cause, and '[w]hat is reasonable depends on the totality of circumstances in the view of a trained law enforcement officer.' *State v. Martinez*, 296 Kan. 482, 487, 293 P.3d 718 (2013). In determining whether reasonable suspicion exists, the court must judge the officer's conduct in light of common sense and ordinary human experience under the totality of the circumstances. This determination is made with deference to a trained officer's 'ability to distinguish between innocent and suspicious circumstances,' while recognizing that it represents a 'minimum level of objective justification' and is 'considerably less than proof of wrongdoing by a preponderance of the evidence.' *Pianalto*, 301 Kan. at 1011 (quoting *Martinez*, 296 Kan. at 487, 293 P.3d 718). On appeal,

'[t]he reviewing court does not "pigeonhole" each factor as to innocent or suspicious appearances, but instead determines whether the totality of the circumstances justifies the detention. *State v. DeMarco*, 263 Kan. 727, 734-35, 952 P.2d 1276 (1998). The relevant inquiry is not whether particular conduct is "innocent" or "guilty," but whether a sufficient degree of suspicion attaches to particular types of noncriminal acts. *United States v. Sokolow*, 490 U.S. 1, 10, 109 S .Ct. 1581, 104 L. Ed. 2d 1 (1989). The totality of the circumstances standard precludes a "divide-and-conquer analysis" under which factors that are "readily susceptible to an innocent explanation [are] entitled to 'no weight.'" *United States v. Arvizu*, 534 U.S. 266, 274, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002).' *State v. Coleman*, 292 Kan. 813, 817-18, 257 P.3d 320 (2011).

See also *State v. Chapman*, 305 Kan. 365, 371, 381 P.3d 458 (2016)." *State v. Sharp*, 305 Kan. 1076, 1081-82, 390 P.3d 542 (2017).

Our Supreme Court's recent reasonable suspicion cases denounce the "divide-and-conquer" analysis and emphasize that "[t]he totality of the circumstances standard does not envision a reviewing court pigeonholing each factor as to innocent or suspicious appearances." *Schooler*, 308 Kan. at 352. See *State v. Lowery*, 308 Kan. 359, 366-67, 420 P.3d 456 (2018).

With that legal standard in mind, we examine the facts to see whether Demarest had a reasonable suspicion of drug activity justifying the extension. At the suppression hearing, Demarest testified that she saw a plastic baggie and a Crown Royal bag hanging out of a safe: "I observed [the safe] partially open and what I believed to be drug paraphernalia partially outside of the safe." When asked whether the Crown Royal bag was important, she replied, "Whenever I observe that, there's drug paraphernalia inside of it."

"Q. Have you seen that before on the streets?

"A. Multiple times.

"Q. Multiple times. That's based on training and experience?

"A. Yes.

"Q. So odds are, it's not a bottle of Crown Royal in its purple felt bag inside the safe?

"A. Correct."

On cross-examination, Demarest confirmed that testimony:

"Q. Was it your testimony that a purple felt bag is an indication of drug paraphernalia? Was that your testimony?

"A. My testimony was that more often than not, when I've located Crown Royal bags, I've located drug paraphernalia inside of them."

Based on that testimony, the district court found Demarest had reasonable suspicion to extend the stop.

Cash asserts that these facts were not enough to warrant reasonable suspicion of a crime. True, "there are a multitude of innocent uses for clear plastic bags and the presence of such a bag is not suspicious, at least by itself." *State v. Jones*, 300 Kan. 630, 648, 333 P.3d 886 (2014). Similarly, a panel of this court has found that a Crown Royal bag, by itself, is not suspicious. *State v. Armstrong*, No. 93,941, 2006 WL 1668767, at *6 (Kan. App. 2006) (unpublished opinion). But we do not view each item separately.

7

Instead, we view them collectively, as did the officer. Nor do we ignore the presence of the safe in the back of the van. We decline Cash's invitation to use the prohibited divide-and-conquer analysis.

The totality of the circumstances justified Cash's detention. Demarest observed a partially opened safe in the back of a van which had no backseats. A plastic baggie and Crown Royal bag were hanging out of the safe. Demarest testified that in her training and experience a Crown Royal bag "more often than not" contains drug paraphernalia. The district court found this testimony credible, and we do the same. See *Hanke*, 307 Kan. at 827 (stating appellate courts does not reweigh the evidence or assess the credibility of witnesses); see also *Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996) (reviewing court must give "due weight" to factual inferences drawn by resident judges and local law enforcement officers).

The State showed that Demarest had the minimum level of objective justification required to support a reasonable suspicion. See *City of Atwood v. Pianalto*, 301 Kan. 1008, 1011, 350 P.3d 1048 (2015). Because Demarest had reasonable suspicion of drug activity, which warranted an extension of the traffic stop, the district court properly denied Cash's motion to suppress.

Affirmed.

* * *

BUSER, J., dissenting:  I dissent. I would conclude that a Crown Royal bag and small plastic baggy hanging out of a partially opened safe in a vehicle did not constitute reasonable suspicion for Officer Caitlin Demarest to extend the traffic stop to investigate a possible drug offense.

8

At the outset, I agree that my colleagues have correctly summarized the governing Fourth Amendment law regarding when a law enforcement officer may extend a traffic stop based on reasonable suspicion of a criminal offense. Slip op. at 4. I disagree, however, with the majority's legal conclusion that under these totality of circumstances Officer Demarest had articulable facts to constitute reasonable suspicion that the Crown Royal bag contained drug paraphernalia. Slip op. at 7-8.

The record does not support that Officer Demarest had such training and experience in the detection of illegal drugs and drug paraphernalia to rely on her opinion that an ordinary cloth bag used to package liquor or a small plastic baggy necessarily contain drug contraband. Officer Demarest had four-and-a-half years' experience as a Lenexa patrol officer. Although the officer testified that she had training in drug investigations, that training occurred at the police academy she attended prior to being commissioned as a police officer. The nature, duration, and extent of that training is unknown. As to her experience with finding drug paraphernalia in Crown Royal bags, Officer Demarest simply testified that she had witnessed this "[m]ultiple times" and "more often than not, when I've located Crown Royal bags, I've located drug paraphernalia inside of them." We are left to speculate how many times constitute "multiple" times and under what circumstances the officer made this association.

Of course, an appellate court's evaluation of reasonable suspicion is made "'with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances.' [Citations omitted.]" *State v. Moore*, 283 Kan. 344, 359, 154 P.3d 1 (2007). In *Moore*, for example, our Supreme Court noted that the district court "took judicial notice that Jimerson [the officer who extended the traffic stop to investigate illegal drug activity] instructs other law enforcement personnel on drug interdiction methods. It acknowledged that Jimerson has an 'extreme amount of experience in interdiction of drug offenses' on highways in the State." 283 Kan. at 359. Based on these findings our Supreme Court gave "appropriate deference to the opinions of a particular

9

law enforcement officer on the scene who, with thousands of traffic stops, is highly experienced in roadside searches and seizures and determination of reasonable suspicion." 283 Kan. at 360.

Officer Demarest's training and experience pales in comparison to Trooper Jimerson's expert qualifications. Based on *Moore* and my review of the limited record, I am not persuaded that Officer Demarest had sufficient training and experience for the district court to rely on her opinion regarding the illicit use of Crown Royal bags.

Moreover, as the majority candidly acknowledges, our Supreme Court and our Court of Appeals in separate cases have questioned the basis for a law enforcement officer to discern incriminating qualities in otherwise innocent bags or baggies. *State v. Jones*, 300 Kan. 630, 648, 333 P.3d 886 (2014) ("[T]here are a multitude of innocent uses for clear plastic bags and the presence of such a bag is not suspicious, at least by itself."); *State v. Armstrong*, No. 93,941, 2006 WL 1668767, at *6 (Kan. App. 2006) (unpublished opinion) (Crown Royal bag, by itself, is not suspicious.).

Officer Demarest's reasonable suspicion was primarily based on the Crown Royal bag. The officer did not testify that she collectively considered the Crown Royal bag and small plastic baggy found partially outside the safe that was inside Cash's vehicle to be suspicious under the totality of the circumstances. We simply do not know what effect, if any, the presence of the safe in the vehicle had on Officer Demarest's determination of reasonable suspicion. In short, we are left with insufficient evidence of reasonable suspicion to justify extending the traffic stop to investigate a possible drug offense.

All things considered, I believe our Supreme Court said it best:

"We do not advocate a total, or substantial, deference to law enforcement's opinion concerning the presence of reasonable suspicion. The officers may possess nothing more

than an 'inchoate and unparticularized suspicion' or 'hunch' of criminal activity. Such a level of deference would be an abdication of our role to make a de novo determination of reasonable suspicion. [Citation omitted.]" 283 Kan. at 359-60.

I would reverse and remand with directions to suppress the evidence seized from Cash's vehicle.