IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,637

STATE OF KANSAS,
*Appellant*,

v.

DERRICK LOWERY,
*Appellee.*

SYLLABUS BY THE COURT

1.

A routine traffic stop is a seizure under the Fourth Amendment to the United States Constitution.

2.

Traffic stops cannot be measurably extended beyond the time necessary to process the infraction that prompted the stop unless there is a reasonable suspicion of or probable cause to believe there is other criminal activity, or consent.

3.

While a driver is being detained for a routine traffic stop, a law enforcement officer may not conduct questioning unrelated to the officer's mission if it measurably extends the stop—absent probable cause or the reasonable suspicion ordinarily demanded to justify detaining an individual.

4.

Reasonable suspicion is a lower standard than probable cause. What is reasonable depends on the totality of the circumstances in the view of a trained law enforcement

officer. In determining whether reasonable suspicion exists, the court must judge the officer's actions in light of common sense and ordinary human experience.

5.

This standard recognizes that events and conditions supporting reasonable suspicion are fluid rather than fixed and the existence of reasonable suspicion may change once new facts are observed by or become known to law enforcement.

Review of the judgment of the Court of Appeals in an unpublished opinion filed May 12, 2017. Appeal from Geary District Court; MARITZA SEGARRA, judge. Opinion filed June 22, 2018. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Tony R. Cruz*, assistant county attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the briefs for appellant.

*Dakota T. Loomis*, of Law Office of Dakota Loomis, LLC, of Lawrence, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

BILES, J.: This is the State's interlocutory appeal from a district court order suppressing evidence discovered in a vehicle search following a traffic stop. The court ruled the stop was unconstitutionally extended. A Court of Appeals panel affirmed. *State v. Lowery*, No. 116,637, 2017 WL 2021311 (Kan. App. 2017) (unpublished opinion). We agree with the lower courts. The officer improperly prolonged the traffic stop, so the resulting drug-related evidence must be suppressed. We apply the law as set out in *State v. Jimenez*, (No. 116,250, this day decided), and *State v. Schooler*, (No. 116,636, this day decided).

FACTUAL AND PROCEDURAL BACKGROUND

The facts are undisputed and are supported by audio/video recordings. In August 2015, Junction City Police Officer Nicholas Blake performed a traffic stop on an automobile for following too closely. The vehicle had two occupants: Derrick Lowery, the driver; and his friend, Matthew Markey, the passenger. Blake explained the reason for the stop and requested Lowery's driver's license and vehicle registration. He asked who the vehicle belonged to, and Lowery responded a friend who was not present. Blake asked Lowery to accompany him to his patrol car so he could check the driver's license and vehicle information and fill out a warning citation.

Once in the patrol vehicle, Blake started filling out the citation. While doing so, he asked where Lowery was from and where the two were going. Lowery said he was going to Fraser, Colorado, and coming from Knoxville, Tennessee. He explained he was originally from Knoxville and lived in Colorado for about eight years. He was in Knoxville for the summer to visit his family. He was heading back to Colorado for the upcoming ski season to work with the ski patrol.

Lowery said it was cheaper to fly to Tennessee at the end of the last ski season but more expensive to fly back so he borrowed his friend's car. He said his friend would fly to Colorado during the ski season to retrieve it. According to Lowery, Markey was his high school friend and was going to spend some time with him in Colorado and maybe get a job at a ski resort. Six minutes and 11 seconds into the vehicle stop, Blake called his dispatch with the license and registration information.

Blake then went back to the automobile and asked Markey generally about the pair's travel plans. Markey said they were headed to Colorado to stay at Lowery's home

3

for a few days before returning to Knoxville. Markey said he had a job in Knoxville and Lowery had unexpectedly called him and asked if he wanted to help drive to Colorado.

Blake returned to his police car. Dispatch radioed back that Lowery had no outstanding warrants. Blake gave Lowery a citation, returned his documents, and told him he was free to go. The stop had taken about 12 minutes to this point. As Lowery exited the patrol vehicle but before he shut the door, Blake asked if Lowery would answer additional questions. Lowery agreed. Blake said he just wanted to make sure Lowery did not "have like nuclear weapons . . . a million pounds of marijuana . . . things of that nature" and asked if he had anything illegal in his car. Lowery answered no.

Blake asked for consent to search the vehicle. Lowery refused. The officer told Lowery to sit down in his patrol car. Once seated, he asked whether Lowery would have a problem if a drug dog came out. Lowery asked, "Do I have the option?"; "Do I have to wait or can I leave?"; and "What's my option?" Blake answered, "[I]t's like a step-by-step process that I have to work on and see what your answers are gonna be." When Lowery asked about probable cause for a search, Blake said he had suspicion and did not need probable cause. Blake detained Lowery.

Blake contacted the Riley County Police Department to see if there were any nearby canine units but was unable to get a response. He had a backup officer stay with Lowery and Markey while he went to his home to retrieve his drug dog. Blake returned with the dog to examine the car's exterior. The dog alerted near the trunk. About 35 minutes passed from the initial stop to when Blake ran the dog around the car. Officers discovered drug-related evidence. Lowery was charged with criminal transportation of drug proceeds, criminal transfer of drug proceeds, and possession of marijuana. See K.S.A. 2014 Supp. 21-5716(b); K.S.A. 2014 Supp. 21-5716(c); K.S.A. 2014 Supp. 21-5706(b)(3) and/or (b)(7).

4

Lowery moved to suppress the evidence, arguing: (1) there was no reasonable suspicion for the initial traffic stop; (2) Blake unlawfully detained Lowery after he told him he was free to leave by immediately asking Lowery if he could ask some further questions; (3) although Lowery agreed to answer Blake's additional inquiries, that encounter was not consensual since he would not feel free to leave; and (4) even if it were deemed a consensual encounter, Blake seized Lowery when he ordered him to sit back down in the patrol car and the seizure was unlawful because there was no reasonable suspicion.

The district court held a suppression hearing, at which Blake testified. The court admitted into evidence the audio/video recordings from the stop.

Blake acknowledged he extended the stop by detaining Lowery to wait for the drug dog. He believed the detention was justified because: (1) Lowery and Markey were extremely nervous; (2) the pair made inconsistent statements about their travel plans; (3) the pair was traveling in a third-party vehicle that was recently purchased, licensed, and insured; (4) the pair was traveling to Colorado, which Blake described as a known "producer of marijuana"; (5) a Missouri state trooper informed Blake during the stop that a license plate reader showed the vehicle was in Columbia, Missouri, three times since July 2015; and (6) his online check for airline ticket prices showed it was cheaper to fly from Knoxville to Denver on all but one airline.

The district court granted the motion to suppress. It found the initial traffic stop lawful since Blake had reasonable suspicion Lowery's vehicle was following another car too closely. It held the stop ended when Blake gave Lowery a warning citation and his documents and told him he was free to leave. It held a consensual encounter then occurred but quickly ended when Blake told Lowery to sit down inside the police car. The court also ruled there was no probable cause to justify the vehicle search.

5

The district court discounted Blake's justification for extending the stop. It found: (1) Blake's testimony could not show nervousness to a degree required for further detention; (2) Lowery and Markey were consistent in stating where they came from, where they were going, where Lowery lived, and what Lowery did for a living and noted the only discrepancy was how long Markey was going to stay in Colorado and whether he was trying to find a job there; (3) the third-party vehicle ownership had limited implications because there was no reason to believe the vehicle was stolen, it was not a rental car, and Blake did not explain why a third-party vehicle that was recently purchased, registered, and insured, would raise criminal suspicion; (4) Lowery gave legitimate reasons why he was going to Colorado by explaining he had lived there for eight years and was employed there; (5) the license plate readings in Columbia were insignificant because it was not far from Tennessee and there was no indication the car had been to Colorado or any known drug source during that time; and (6) Blake's inquiry into the airfare costs was limited since he only checked prices for the day the stop occurred.

The State timely filed an interlocutory appeal. See K.S.A. 2017 Supp. 22-3603; see also *State v. Newman*, 235 Kan. 29, 34, 680 P.2d 257 (1984) (noting suppression must substantially impair the State's case to pursue interlocutory appeal). A Court of Appeals panel affirmed. *Lowery*, 2017 WL 2021311.

The panel concluded the officer lacked reasonable suspicion to extend the stop, citing *State v. DeMarco*, 263 Kan. 727, 734-35, 952 P.2d 1276 (1998). It noted, "*DeMarco* found nervousness, inconsistent or unlikely travel plans, and the use of a rental car did not justify further detention. [Citation omitted.] *Similarly, Lowery and Markey's nervousness, their allegedly implausible travel plans, and the use of a third-party vehicle do not justify further detention*." (Emphasis added.) 2017 WL 2021311, at *4.

6

The State petitioned for review, which we granted. Jurisdiction is proper. K.S.A. 20-3018(b) (petition for review of Court of Appeals' decision); K.S.A. 60-2101(b) (providing Supreme Court jurisdiction over cases subject to review under K.S.A. 20-3018).

ANALYSIS

Traffic stops are seizures under the Fourth Amendment and are subject to its limitations. *Whren v. United States*, 517 U.S. 806, 809-10, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996); *City of Atwood v. Pianalto*, 301 Kan. 1008, 1011, 350 P.3d 1048 (2015).

There is no challenge to the initial stop, so we consider it lawful. We are concerned only with whether the stop became an illegal seizure as it evolved. This determination turns on whether the officer measurably extended the stop without reasonable suspicion of or probable cause to believe there is other criminal activity. *Rodriguez v. United States*, 575 U.S. __, 135 S. Ct. 1609, 1615, 191 L. Ed. 2d 492 (2015); see also *Pianalto*, 301 Kan. 1008, Syl. ¶ 2 (to comply with Fourth Amendment, officer conducting stop must have reasonable suspicion detainee "has committed, is committing, or is about to commit a crime").

*Standard of review*

Faced with a motion to suppress evidence, the State bears the burden of proving a lawful search and seizure. K.S.A. 22-3216(2); *State v. Gray*, 306 Kan. 1287, 1302, 403 P.3d 1220 (2017). As to the trial court's decision,

> "'an appellate court reviews the factual underpinnings of the decision under a substantial
> competent evidence standard. The ultimate legal conclusion drawn from those facts is
> reviewed de novo. . . . Substantial evidence refers to evidence that a reasonable person
> could accept as being adequate to support a conclusion. . . . This court does not reweigh

7

the evidence, assess the credibility of the witnesses, or resolve evidentiary conflicts. [Citations omitted.]' *State v. Mattox*, 305 Kan. 1015, 1035, 390 P.3d 514 (2017)." *State v. Brown*, 306 Kan. 1145, 1151, 401 P.3d 611 (2017).

The district court and reviewing courts must consider whether the officer had reasonable suspicion that other criminal activity might be occurring. Whether reasonable suspicion exists is a question of law. *State v. Sharp*, 305 Kan. 1076, 1081, 390 P.3d 542 (2017).

*Discussion*

In *Jimenez*, and *Schooler*, we described and applied Fourth Amendment jurisprudence relating to traffic stops, particularly given *Rodriguez,* 135 S. Ct. at 1615, and its progeny. This court had not previously explored *Rodriguez*, so neither the district court nor the panel had the benefit of that review when they addressed Lowery's suppression motion.

As discussed in *Jimenez* and *Schooler*, a routine traffic stop is a seizure under the Fourth Amendment more analogous to an investigative detention than a custodial arrest. This means courts treat a traffic stop, whether based on reasonable suspicion or probable cause, under the longstanding limitations set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), for nonconsensual police-citizen contacts. *Schooler*, slip op. at 16-17.

Our decisions in *Jimenez* and *Schooler* required us to determine whether travel plan questioning was outside the scope of the stop's mission, and if so, whether it impermissibly extended the stop's duration. See *Jimenez*, slip op. at 12 (concluding that *Rodriguez* "means that during a stop an officer may not conduct nonconsensual inquiries

8

unrelated to the mission in a way that prolongs the stop—without the reasonable suspicion ordinarily demanded to justify detaining an individual"); *Schooler*, slip op. at 19 (noting travel plan inquiry was irrelevant to a traffic infraction for a license tag obscured by snow).

But our focus in Lowery's case is solely whether Blake had reasonable suspicion to detain him after he completed processing the traffic violation. We note, though, that we perceive no impermissible detention stemming from Blake's travel plan inquiries. A question such as "how long have you been driving" could reasonably relate to an infraction for driving too closely. See 4 LaFave, Search & Seizure § 9.3(d) (5th ed. 2017). And the audio/video recordings reflect the officer asked Lowery and Markey travel questions while processing the traffic infraction simultaneously, so that questioning was permissible even if unrelated. See *Jimenez*, slip op. at 15 ("This suggests that officers engaging in traffic stops in *Rodriguez*' wake must be attentive to how and when they conduct what may be viewed as unrelated inquiries. They must be especially careful to ensure nonconsensual inquiries occur concurrently with the tasks permitted for such stops . . . . We would more simply describe this today as multitasking.").

That said, the district court did not discuss reasonable suspicion. Instead, it made a probable cause determination. It reasoned the stop had ended, so Blake "needed probable cause to search the defendant's car. A warrantless search by a police officer is, per se, unreasonable under the [F]ourth [A]mendment, unless the State can fit the search within one of the recognized exceptions to the warrant requirement, one of which is probable cause plus exigent circumstances." This analysis was improper.

Lowery's motion to suppress never raised an unlawful search issue. It focused exclusively on the seizure, i.e., the detention. At the suppression hearing, Lowery only

asserted there was no reasonable suspicion to detain him "any period of time" once the initial stop ended. This is the legal question the district court needed to decide.

We now turn to whether the circumstances the State cites supplied reasonable suspicion that Lowery was engaging in other criminal activity during the stop.

*There was not reasonable suspicion to extend the stop*

Reasonable suspicion is "'"a particularized and objective basis" for suspecting the person stopped of criminal activity.'" *DeMarco*, 263 Kan. at 735. "Something more than an unparticularized suspicion or hunch must be articulated." 263 Kan. at 735.

Reasonable suspicion is a lower standard than probable cause. "What is reasonable depends on the totality of circumstances in the view of a trained law enforcement officer." *State v. Martinez*, 296 Kan. 482, 487, 293 P.3d 718 (2013). The totality of the circumstances standard "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002). A reviewing court must give "due weight" to the factual inferences drawn by both the district court and law enforcement officers. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996).

The totality of the circumstances standard does not envision a reviewing court pigeonholing each factor as to innocent or suspicious appearances. Instead, the court determines whether all the circumstances justify the detention.

> "'The relevant inquiry is not whether particular conduct is "innocent" or "guilty," but whether a sufficient degree of suspicion attaches to particular types of noncriminal acts.

10

> [Citation omitted.] The totality of the circumstances standard precludes a "divide-and-conquer analysis" under which factors that are "readily susceptible to an innocent explanation are entitled to 'no weight.' [Citation omitted.]"'" *Sharp*, 305 Kan. at 1081.

At the same time, while the standard does not permit officers or the courts to selectively choose the facts that would establish reasonable suspicion, it recognizes events and conditions supporting reasonable suspicion are fluid rather than fixed, and the existence of reasonable suspicion may change once new facts are observed by or become known to law enforcement. *Sharp*, 305 Kan. at 1085.

The State argues six circumstances favor a conclusion that Blake had reasonable suspicion: (1) nervousness; (2) inconsistent travel plan statements; (3) operating a third-party vehicle; (4) traveling to Colorado; (5) the vehicle's recent presence in Columbia, Missouri; and (6) the officer's online research of airline prices. Taken together, we disagree.

### *Nervousness*

The State argues this court must give deference to Blake's "ability to distinguish between innocent and suspicious circumstances" because the officer testified both occupants were not merely nervous, but "extremely nervous." But the video tells a different story and supports the district court's finding. While Lowery could be described as nervous, especially after the officer turned to more incriminating subjects, Lowery can be seen answering Blake's questions with little hesitation, without confusion, and in a conversational tone.

Another problem with the State's suggestion is that it asks this court to make its own finding about the degree of nervousness. On appellate review, our deference is not to

11

particular witnesses but to the fact-finder who has resolved an evidentiary conflict. See *Mattox*, 305 Kan. at 1035 (court reviewing decision on suppression motion does not reweigh evidence or resolve evidentiary conflicts). This would usurp the district court's position as finder of fact. *United States v. Santos*, 403 F.3d 1120, 1128 (10th Cir. 2005). Caselaw supports the district court's refusal to give nervousness much weight in determining whether Blake had reasonable suspicion. See *Santos*, 403 F.3d at 1127 (holding nervousness is a common and natural reaction to confrontation with the police, so only extraordinary and prolonged nervousness can weigh significantly in assessing reasonable suspicion); *United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir. 2001) (holding nervousness is of limited significance in deciding if reasonable suspicion existed; extreme and persistent nervousness is entitled to somewhat more weight); see also *DeMarco*, 263 Kan. at 738 (holding nervousness alone could not supply reasonable suspicion).

*Inconsistent travel plans statements*

As to the discrepancy in the occupants' travel plan statements, we agree with the district court's conclusion that this was minor and insignificant as a basis for suspecting criminal activity. Lowery said Markey was going to get a job in Colorado in a ski business but specifically noted nothing was certain about it and that the ski season would not start until November. Markey's statement that he was staying in Colorado only for a few days and currently had a job in Knoxville was not completely inconsistent with what Lowery said. The stop was in August; it seems plausible Markey might return in the short term to Knoxville and then go back to Colorado for a winter job. The discrepancy between staying in Colorado a couple weeks and a couple days is insignificant when looking at the two statements in their entirety. As the district court accurately observed, "Everything else . . . about the travel plans were . . . consistent." The minor discrepancies do not support reasonable suspicion.

12

*Third-party vehicle*

As to the third-party vehicle, the State argues it supports reasonable suspicion based on a federal district court's unpublished order adopting a magistrate judge's recommendation denying a motion to suppress, *United States v. Moreno*, No. 2:12-CR-644 TS, 2013 WL 5964448 (D. Utah 2013) (unpublished opinion). But in *Moreno*, the defendant not only had a third-party-owned vehicle but also did not know the car's owner. The State also cites *United States v. Ludwig*, 641 F.3d 1243, 1249 (10th Cir. 2011), in which the court recognized this could be at least relevant to a reasonable suspicion analysis depending on circumstances. In Lowery's case, vehicle ownership was not doubted and the car was properly insured, tagged, and registered. There was no report the vehicle was stolen. Under these circumstances, this factor does little if anything to support reasonable suspicion.

*Colorado destination*

Lowery was able to give reasons why he was heading to Colorado, telling Blake he lived there for eight years and was employed there. And his driver's license showed Colorado as his current address. As a result, even "in the view of a trained law enforcement officer," and "in light of common sense and ordinary human experience under the totality of the circumstances" this fact does not weigh in favor of reasonable suspicion and should not be considered to add anything to the degree of suspicion. *Sharp*, 305 Kan. at 1081.

*Vehicle's presence in Colombia, Missouri*

As to the license plate readings, there was no evidence they occurred during three distinctive trips or all happened within one trip. Additionally, when cross-examined, Blake conceded there was "no evidence that car, when it caught on the license plate

13

reader in Columbia, continued to travel into . . . Colorado." We agree with the district court there is nothing in this context supporting a reasonable suspicion.

*Online checking for airline prices*

This offers no support for the State. This circumstance's significance is that the officer learned information that betrayed an alleged falsehood in Lowery's statements. See *United States v. Simpson*, 609 F.3d 1140, 1149 (10th Cir. 2010) ("[L]ies, evasions or inconsistencies about any subject while being detained may contribute to reasonable suspicion."). When cross-examined, Blake testified he was not sure when he checked the airfares or whether he even did so during the stop, which would be a minimum requirement if the information learned were to support further detaining Lowery. See *State v. Thompson*, 284 Kan. 763, 774, 166 P.3d 1015 (2007) (motorist must be allowed to leave if no information raising reasonable suspicion is found "during the time period necessary to perform the computer check and other tasks incident to a traffic stop"). We also note the video recordings do not show Blake conducting any online search before he instructed Lowery to sit down and wait for the drug dog. Even so, checking airline ticket prices during the stop would not provide any legitimate information about pricing for tickets purchased on another day.

CONCLUSION

Although reasonable suspicion requires a case-by-case evaluation, the panel correctly held *DeMarco* was factually like this case and upheld the district court's suppression ruling. In *DeMarco*, there was no reasonable suspicion to extend that stop when the driver was nervous, there was a minor discrepancy between the driver and passenger's accounts of the pair's travels, and the pair was traveling in a rented car. The court reasoned nervousness alone could not supply reasonable suspicion, the travel plan

14

inconsistency was "not as marked as the inconsistencies" in cases where there was reasonable suspicion, and noted rental car users covered a "large group[ ]." 263 Kan. at 738-41. Like *DeMarco*, we consider the factors mentioned above as a whole and conclude Blake did not have reasonable suspicion to detain Lowery after the traffic stop.

We hold the State did not meet its burden to show the challenged seizure was lawful. The district court correctly concluded the officer did not provide "an objectively reasonable and articulable suspicion that criminal activity was or is taking place." *State v. Jones*, 300 Kan. 630, 641, 333 P.3d 886 (2014). There is no "minimum level of objective factors justifying reasonable suspicion necessary to overrule the district court." *DeMarco*, 263 Kan. at 741.

Affirmed.

\* \* \*

JOHNSON, J., concurring:  I concur with the majority's result, i.e., affirming the district court's granting of the defense motion to suppress evidence.

I write separately to clarify that I do not join with the majority's unnecessary observation, to-wit:  "We note, though, that we perceive no impermissible detention stemming from [Officer] Blake's travel plan inquiries." Slip op. at 9. That dictum does nothing to further the resolution of the question framed by the majority and it should have no precedential effect with respect to the propriety of travel plan inquiries. See, e.g., *Law v. Law Company Building Assocs.*, 295 Kan. 551, 564, 289 P.3d 1066 (2012) ("'Nobody is bound by dictum . . .'not even . . . the court itself.'"").

15