NOT DESIGNATED FOR PUBLICATION

No. 124,172

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LORI ANN WINTER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Jackson District Court; NORBERT C. MAREK JR., judge. Opinion filed January 27, 2023. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BRUNS and WARNER, JJ.

PER CURIAM: Lori Ann Winter appeals after a jury convicted her of possession of methamphetamine, possession of drug paraphernalia, and transporting an open container. On appeal, Winter challenges the district court's denial of her motion to suppress evidence obtained from the search of the vehicle she was driving at the time of a traffic stop. Winter also contends that there was insufficient evidence presented by the State to support either of her possession convictions without improper inference or presumption stacking. Finally, Winter contends that the district court erred by failing to give a nonexclusive possession instruction to the jury.

1

Based on our review of the record on appeal, we do not find that the district court erred in denying Winter's motion to suppress the evidence seized during the traffic stop. We also find that the State presented sufficient evidence to support Winter's possession convictions without relying upon impermissible inference or presumption stacking. Furthermore, we find that the district court's failure to give a nonexclusive possession instruction to the jury was not clearly erroneous. Thus, we affirm Winter's convictions.

FACTS

The parties have agreed to the following stipulated facts:

"In the matter at hand, Deputy Travis Davis affected a traffic stop on a [van] operated by the defendant on December 25, 2018, on U.S. 75 Highway within Jackson County, Kansas. The officer stopped the vehicle because the vehicle was traveling 75 mph in a 65 mph zone at approximately 9:07 p.m.

"The officer made contact with the defendant, Lori Winter, who was the driver of the vehicle. There were two other occupants inside the vehicle. During the initial contact with the defendant, the officer made observations . . . which are captured upon video taken by the officer's body camera . . . which caused the officer to believe the defendant was under the influence of certain illegal stimulants.

"Based upon the officer's observations, the officer requested the defendant to take standard field sobriety tests to determine whether the defendant was driving under the influence of alcohol and/or drugs. The officer noted no erratic driving nor the odor of alcohol nor the odor of any illegal drugs. The officer observed several other clues of impairment during the field sobriety tests, including the walk and turn test, one leg stand test and a preliminary breath test. The officer testified that the defendant failed both the walk and turn test and the one leg stand test. Alcohol was not detected on the preliminary breath test.

"Based upon his observations, the officer placed the defendant under arrest for suspicion of Driving Under the Influence.

2

"While the field sobriety tests were being completed another officer responded to the scene and approached the passenger side of the vehicle to speak with the passengers and detected the odor of marijuana coming from the vehicle.

"Based off the smell of marijuana emanating from the vehicle, the officers then searched the vehicle the defendant was operating. The officers discovered a black in color purse on the driver's floorboard which contained a glass pipe with a white residue. The item was subsequently tested by the KBI Laboratory, and methamphetamine was detected in the item. The officers also discovered a cup in the front center console that smelled of alcohol; a metallic flask that smelled of alcohol; and an unsealed vodka bottle under the rear passenger seat.

"After the search of the vehicle, Deputy Davis approached the defendant and informed her of her rights per Miranda. The defendant waived her rights and told the Deputy Davis that she was unaware of the pipe in her purse and that she didn't know why she smelled . . . like burnt marijuana."

On January 9, 2019, the State charged Winter with one count of possession of methamphetamine, one count of possession of drug paraphernalia, one count of transporting an open container, and one count of driving under the influence. The State later dropped the driving under the influence charge. Winter filed a pretrial motion to suppress the evidence obtained from the search of the van she was driving at the time of the traffic stop. It is undisputed that the van was owned by her employer, that her son was the front seat passenger, and that his then girlfriend was the rear passenger. It is also undisputed that the other officer who arrived at the scene was Sergeant Heath Delany.

The district court held a suppression hearing on September 13, 2019. At the hearing, the State presented the testimony of Deputy Davis. He testified regarding his observations of Winter during the traffic stop as well as her failure of two field sobriety tests. In addition, Deputy Davis' body camera footage from the traffic stop was submitted to the court as an exhibit and was reviewed by the district court. Although counsel

3

presented legal arguments to the court, no other evidence was presented at the hearing. Following the hearing, the district court issued a written order denying the motion to suppress.

In its order denying the motion to suppress, the district court found:

"[Deputy Davis had] reasonable suspicion to ask Ms. Winter to participate in field sobriety testing. It was reasonable to extend the investigation to inquire further about Ms. Winter's lack of a driver's license on her person and whether she had any health conditions. Meanwhile, Officer Delany's actions during the stop did not delay it and it appears that he encountered the smell of marijuana just before the stop became more problematic . . . [s]ince Sgt. Delany had already detected the smell of marijuana by this time the resulting search of the vehicle was lawful."

On January 20, 2021, the district court held a one-day jury trial. By agreement, the stipulated facts were admitted as a trial exhibit and the State read them to the jury during its opening statement. In its case in chief, the State presented the testimony of Deputy Davis. In addition, the State played his body camera footage from the traffic stop—which was admitted as an exhibit—to the jury. The State also offered—and the district court admitted into evidence over Winter's objection—the glass pipe, the zipper bag that held the glass pipe, a Kansas Bureau of Investigation (KBI) report showing that the white substance on the glass pipe tested positive for methamphetamine, and an alcohol bottle found during the traffic stop.

Deputy Davis again testified regarding the events surrounding the traffic stop as well as his observations of Winter. He recalled that when he approached the van, Winter told him she was speeding to pick up her grandkids who were stranded on the side of the highway. Although she looked for her driver's license, Winter was unable to find it and instead gave the officer her social security card. Deputy Davis described Winter as being "very animated" and making "fast movements" when he was speaking with her.

4

According to the officer, Winter "had a hard time focusing on single tasks" and was acting in an "[e]rratic" manner.

Deputy Davis further testified regarding his training and experience including hundreds of traffic stops. He indicated that although it was common for drivers to be nervous when they were pulled over, Winter was acting like someone who was under the influence. In particular, Deputy Davis testified that her "kind of behavior is indicative of a person . . . under the influence of certain stimulants like methamphetamine." He also stated that he knew the difference between someone who was nervous and someone who was possibly under the influence. Although Winter initially denied that she had been drinking or using drugs, she later stated that she had a large glass of wine earlier in the evening after the officer told her he suspected she was "on something."

According to Deputy Davis, Winter complied when he asked her to step out of the van and she agreed to complete field sobriety testing. The officer testified that he requested testing based on Winter's speech, demeanor, and admission to drinking alcohol. He further testified that although the preliminary breath test did not show that Winter was under the influence of alcohol, she failed the walk and turn test as well as the one-leg stand test. Based on her failure of two field sobriety tests, her erratic behavior, and the fact that she had initially been deceptive in responding to his questions, Deputy Davis suspected that Winter had been operating the vehicle under the influence of drugs. As a result, he asked her some additional questions about her driver's license, whether she had any health conditions, and whether she had ever been arrested.

While Deputy Davis was administering the field sobriety tests, Sergeant Delany had arrived at the scene. When he went to speak to the passengers still sitting in the van, Sergeant Delany smelled what he believed to be marijuana coming from the vehicle. Deputy Davis then went to the front passenger side of the vehicle and also smelled what he believed to be marijuana. At that point, the officers had the two passengers step out of

5

the van and they conducted a search of the vehicle. Deputy Davis testified that he found an unsealed vodka bottle with alcohol in the bottom on the rear passenger floorboard, a metallic flask that smelled like alcohol on the front driver's side floorboard, a mixed drink in the center cupholder, a beer can with some liquid still in it inside the center console, and a glass pipe with residue inside a black purse sitting on the front driver's side floorboard.

Deputy Davis testified that the glass pipe was found inside a red zipper bag located inside the black purse. The pipe was wrapped up in a rag and there was also a spoon with residue found inside the purse. The officer explained that the purse was "right next to" where Winter's feet had been when she was in the vehicle. It is undisputed that the glass pipe was subsequently tested by the KBI and found to be positive for methamphetamine. After searching the vehicle, Deputy Davis placed Winter under arrest for driving under the influence and possession of drugs.

In her defense, Winter presented the testimony of her boss, Matt Schrader, and her son, Levi Winter. Schrader testified that Winter was a good employee and that he did not suspect her of doing drugs. He also testified that at various times several other employees had access to the van that Winter was driving at the time of the traffic stop. Winter's son testified that his mother did not own a black purse and usually carried a red purse. He also testified that he never suspected his mother of using drugs. In addition, he testified that he learned about one month later that his then girlfriend—who had been a backseat passenger at the time of the traffic stop—had been using methamphetamine.

After deliberation, the jury convicted Winter of the three remaining charges. The district court subsequently sentenced her to an 11 months' incarceration to be followed by 12 months of postrelease supervision. However, the district court suspended the sentence and placed Winter on probation for a period of 12 months. Thereafter, she filed a timely notice of appeal.

ANALYSIS

*Motion to Suppress*

Winter contends that the district court erred in denying her motion to suppress the evidence seized during the traffic stop. She argues that the evidence was obtained illegally because the traffic stop was unreasonably extended. At the outset, we note that Winter is not challenging the legality of the initial traffic stop for speeding. Rather, she argues that Deputy Davis continued to detain her "after dispelling any reasonable suspicion regarding whether [she] was driving while intoxicated."

In response, the State contends that the extension of the traffic stop was legal because Deputy Davis continued to have a reasonable suspicion that Winter was driving while under the influence of drugs. The State argues that it was appropriate for the officer to continue his questioning Winter in light of his suspicion. It also points to evidence in the record that is sufficient to establish a reasonable suspicion by Deputy Davis based on his training and experience. This evidence includes—but is not limited to—Winter's erratic behavior and her failure of two field sobriety tests that the officer administered.

When reviewing a district court's ruling on a motion to suppress, we review its findings of fact to determine whether they are supported by substantial competent evidence. If they are supported by substantial competent evidence, we conduct a de novo review of the district court's legal conclusion. *State v. Cash*, 313 Kan. 121, 125-26, 483 P.3d 1047 (2021). In conducting our review of the district court's factual findings, we are not to reweigh the evidence or assess the credibility of witnesses. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

Each person has a right to be secure in their person and property against unreasonable searches and seizures. This right is protected under the Fourth Amendment

7

to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights. Furthermore, "[t]raffic stops are seizures under the Fourth Amendment and are subject to its limitations." *State v. Lowery*, 308 Kan. 359, 363, 420 P.3d 456 (2018). As a result, the State carries the burden to prove the lawfulness of a search and seizure by law enforcement officers. *Cash*, 313 Kan. at 126.

As the Kansas Supreme Court has explained, traffic stops are "more analogous to an investigative detention than a custodial arrest, so courts treat the traffic stop, whether based on reasonable suspicion or probable cause, under the longstanding limitations from *Terry* for nonconsensual police-citizen contacts. Under *Terry*, . . . a lawful stop must be reasonably related in scope to the circumstances justifying the interference in the first place. [Citation omitted.]" *State v Jimenez*, 308 Kan. 315, 323, 420 P.3d 464 (2018) (citing *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 20 L. Ed. 2d 889 [1968]). If a law enforcement officer has reasonable suspicion to believe that the person stopped was or is involved in other criminal activity, the traffic stop may be extended. *State v. Jones*, 300 Kan. 630, Syl. ¶ 6, 333 P.3d 886 (2014).

"What is reasonable depends on the totality of circumstances in the view of a trained law enforcement officer." *State v. Martinez*, 296 Kan. 482, 487, 293 P.3d 718 (2013). On the one hand, reasonable suspicion is more than a hunch. *Lowery*, 308 Kan. at 366. On the other hand, law enforcement officers are permitted to "'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them.'" *Lowery*, 308 Kan. at 366 (quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 [2002]).

Here, Winter frames the issues as "whether reasonable suspicion existed to justify continued detention after the initial traffic stop." In support of the actions of Deputy Davis, the State points to evidence that—if viewed collectively—supports the district court's denial of Winter's motion to suppress. Based on our review of the record on

appeal, we agree with the State that the extension of the stop was reasonable based on the cumulative information and observations made by Deputy Davis and Sargent Delany.

As discussed in the Fact section of our opinion, Winter has not challenged the initial traffic stop for speeding on U.S. 75. Deputy Davis testified at the suppression hearing that Winter was slow to pull over after he turned on his lights and siren. When he approached the van and asked for identification, Winter could not find her driver's license. A review of the body camera video—which is a part of the record on appeal—reveals that Winter told the officer, "I need *my* purse" (emphasis added). Her son proceeds to pick up a black purse from the floorboard next to the driver's seat and hands it to Winter. Winter then searches through the black purse looking for her driver's license. Evidently unsuccessful, Winter eventually gives the officer her social security card.

Deputy Davis also testified regarding what he considered—based on his training and experience—to be erratic behavior displayed by Winter during the traffic stop. This testimony is confirmed by a review of the bodycam video that was viewed by the district court at the suppression hearing, by the jury at trial, and by this court. As Deputy Davis testified, the video confirms that when he spoke to Winter while she was still in the van, she was speaking and moving very quickly.

Deputy Davis described Winter's demeanor as being "kind of all over the place" and that she lacked the ability to focus. Deputy Davis—who had been a law enforcement officer for about eight years, had attended several DUI training seminars, and who had "seen a lot of people on meth"—testified at the suppression hearing that he believed her behavior was more than simply nervousness. Instead, based on his experience, Deputy Davis described Winter's mannerisms as "consistent with behavior [he has] seen with people who are on stimulants, such as methamphetamine specifically."

9

As a result of his suspicion that Winter had been operating a vehicle while under the influence of alcohol or drugs, Deputy Davis asked if she was under the influence of anything and she answered no. When he told her that he believed she was under the influence of something, Winter said she had a "big glass of wine" earlier in the evening. It was at that point that Deputy Davis asked Winter to exit the vehicle so that he could conduct field sobriety testing. At the suppression hearing, Deputy Davis testified that he made the decision to conduct field sobriety testing based on his suspicion that she was operating the vehicle under the influence of alcohol or drugs and that this suspicion was based on Winter's speeding, her delay in pulling over, her speech, her erratic demeanor, and her admission to drinking alcohol.

Deputy Davis testified that Winter failed two field sobriety tests. Specifically, the officer testified that he observed several clues of impairment during the walk and turn test and the one leg stand test. A review of the video shows Winter's unsteadiness during the administration of these tests. However, it is undisputed that the preliminary breath test revealed that she was not under the influence of alcohol.

While Deputy Davis was performing the field sobriety tests, Sergeant Delany had responded to the scene. After Deputy Davis told him about Winter failing the two field sobriety tests, Sergeant Delany approached the passenger side of the van to speak with the passengers. In doing so, Sergeant Delany detected the odor of marijuana coming from the vehicle. Deputy Davis then approached the passenger side of the vehicle and also detected the odor of marijuana. As a result, the officers decided to search the van. In performing the search, the officers discovered—among other things—a black purse on the driver's side floorboard which contained a glass pipe with residue inside of a red zipper bag. The pipe was subsequently tested by the KBI Laboratory, and methamphetamine was detected.

Winter argues on appeal that Deputy Davis impermissibly extended the stop when he continued to question her after completing the field sobriety testing. In support of her argument, Winter cites *State v. DeMarco*, 263 Kan. 727, 738, 952 P.2d 1276 (1998) and *Lowery*, 308 Kan. at 367. In both cases, our Supreme Court found that an officer lacked reasonable suspicion to extend a traffic stop based on inconsistent travel plans, presence in a known drug trafficking location, and extreme nervousness. *DeMarco*, 263 Kan. at 730, 741; *Lowery*, 308 Kan. at 367. Here, unlike *DeMarco* and *Lowery*, Deputy Davis not only observed Winter's erratic behavior but also knew that she had failed two field sobriety tests. Accordingly, we find that it was appropriate for Deputy Davis to ask Winter additional questions about his suspicion that she had been driving under the influence of drugs before releasing her to operate a vehicle on the U.S. 75 Highway.

In summary, we find that it was reasonable for Deputy Davis to extend the traffic stop to make further inquiry regarding the suspicion of Winter driving under the influence of drugs even after she passed a preliminary breath test for alcohol. This is based on her failure of the two field sobriety tests as well as her erratic behavior as described above. In reaching this decision, we also take into consideration Deputy Davis' training and experience in dealing with impaired drivers. A review of the record—especially the video of the encounter—confirms that the officer had more than a hunch about Winter's potential impairment. As the district court found and the video confirms, by the time Deputy Davis had completed his additional inquiry, Deputy Delany had already detected the smell of marijuana coming from the vehicle. Consequently, we conclude that the district court did not err in denying Winter's motion to suppress.

*Sufficiency of Evidence*

Next, Winter contends that the State engaged in impermissible inference stacking by relying upon Winter's proximity to the methamphetamine and drug paraphernalia found inside the vehicle to allege that she was in possession of them. In response, the

11

State contends that it presented several pieces of evidence that—taken together—were sufficient to establish that Winter possessed both the methamphetamine and the drug pipe. "'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh the evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. [Citations omitted.]'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

The State charged Winter in an amended complaint with possession of methamphetamine under K.S.A. 2018 Supp. 21-5706(a) and (c)(l) and possession of drug paraphernalia, the drug pipe, under K.S.A. 2018 Supp. 21-5709(b)(2). To prove these crimes, Kansas law required the State to present evidence to establish that Winter knowingly or intentionally possessed methamphetamine and knowingly or intentionally possessed a drug pipe with the intent to use it as drug paraphernalia. See K.S.A. 2018 Supp. 21-5706(a) and (c)(l); K.S.A. 2018 Supp. 21-5709(b)(2). As the district court appropriately instructed the jury, the State was required to prove every element of each offense beyond a reasonable doubt. *State v. Chandler*, 307 Kan. 657, 669, 414 P.3d 713 (2018).

In reviewing the sufficiency of the evidence, we do not differentiate between circumstantial and direct evidence. "'A conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an inference is a reasonable one, the jury has the right to make the inference.'" *State v. King*, 308 Kan. 16, 28, 417 P.3d 1073 (2018). To prove possession, the State was required to present sufficient evidence that Winter either: (1) exercised "joint or exclusive control over [the substance] with knowledge of and intent to have such control" or (2) knowingly kept the substance "in a place where [he or she] has some measure of access and right of control." K.S.A. 2018 Supp. 21-5701(q).

12

A person may have possession exclusively, jointly with another person, or constructively when the defendant has some measure of access and a right of control. *State v. Boggs*, 287 Kan. 298, 313, 197 P.3d 441 (2008). Merely being in the proximity of or having access to drugs is not sufficient—in and of itself—to sustain a conviction for possession of drugs or drug paraphernalia in a case where the defendant does not have exclusive control of the area where the drugs are found. *State v. Keel*, 302 Kan. 560, Syl. ¶ 2, 357 P.3d 251 (2015). However, the State may prove possession by presenting other evidence of incriminating circumstances linking the defendant to the drugs.

Some of the other types of evidence that may link a defendant to the possession of drugs include "(1) the defendant's previous sale or use of narcotics; (2) the defendant's proximity to the area in which the drugs were found; (3) the fact that the drugs were found in plain view; and (4) the defendant's incriminating statements or suspicious behavior." *Keel*, 302 Kan. 560, Syl. ¶ 2. Although none of these factors alone are sufficient, when taken together they provide a sufficient inference of possession. *State v. Rosa*, 304 Kan. 429, 434, 371 P.3d 915 (2016). In addition to relying upon circumstantial evidence to prove the elements of a crime, the State is also allowed to ask the jury to make reasonable presumptions and draw reasonable inferences from established facts. *Chandler*, 307 Kan. at 670.

Nevertheless, the State cannot meet its burden of proof by relying upon inference or presumption stacking. As our Supreme Court recently explained in *State v. Valdez*, 316 Kan. 1, 11-12, 512 P.3d 1125 (2022):

> "When the State asks a jury to make a presumption based on other presumptions, it does not carry its burden to present sufficient evidence to sustain a criminal conviction. *State v. Banks*, 306 Kan. 854, 859, 397 P.3d 1195 (2017). But this impermissible inference stacking does not occur when different circumstances are used to support separate inferences, or when multiple pieces of circumstantial evidence separately support a single inference. *Banks*, 306 Kan. 854, Syl. ¶ 3, 397 P.3d 1195; see also State v. Colson, 312

13

Kan. 739, 753, 480 P.3d 167 (2021) (holding no inference stacking occurred when 'the evidence supporting each inference [was] separate and distinct; no inference was necessarily presumed based on another presumption'). Rather, 'it is permissible for the State to rely on multiple circumstances to support an inference . . . so long as each circumstance has been proved, rather than presumed from another circumstance. In other words, while it is impermissible for a case to rely upon the theory that presumption A leads to presumption B leads to presumption C leads to fact D, it is perfectly proper for the State's case to be grounded upon a theory that presumption A, presumption B, and presumption C all separately point to fact D. [Citation omitted.]' *Banks*, 306 Kan. at 860-61, 397 P.3d 1195."

Viewing the record on appeal in a light most favorable to the State, we find that sufficient circumstantial evidence was presented at trial upon which the jury could find Winter to be guilty beyond a reasonable doubt of both possession of methamphetamine and possession of drug paraphernalia without relying on improper inference or presumption stacking. In particular, the record reveals that the State presented several pieces of circumstantial evidence that could reasonably be viewed by the jury as proving that Winter constructively possessed the methamphetamine and constructively possessed the drug paraphernalia.

The circumstantial evidence presented by the State in support of the possession charges includes: (1) Winter was driving the vehicle at the time it was stopped; (2) both the methamphetamine and the glass pipe were found in a red zippered pouch inside a black purse found on the floorboard near the driver's seat where Winter had been sitting; (3) Winter looked through a black purse sitting next to the driver's seat toward the beginning of the stop in an attempt to find her driver's license or identification; (4) body camera footage shows that the other female passenger in the vehicle retrieved her driver's license from a different purse located in the back seat of the vehicle; and (5) in speaking to Deputy Davis, Winter did not deny that the purse in which the methamphetamine and

14

glass pipe were found belonged to her. See *State v. Black*, No. 120,412, 2020 WL 741528, at *4 (Kan. App.) (unpublished opinion) *rev. denied* 312 Kan. 894 (2020).

We find that these individual pieces of circumstantial evidence separately support the State's theory that the black purse belonged to Winter and do not constitute impermissible inference or presumption stacking. Although Winter lacked exclusive control over the contents of the vehicle, the State presented evidence of incriminating circumstances upon which a reasonable factfinder could conclude that Winter possessed the drugs and possessed the drug paraphernalia found in the black purse on the driver's side of the vehicle. Hence, viewing the evidence—and the reasonable inferences that can be gleaned therefrom—in a light most favorable to the State, we conclude that there was sufficient evidence presented at trial to support the jury's verdict that Winter was guilty of both possession of methamphetamine and possession of drug paraphernalia.

*Nonexclusive Possession Jury Instruction*

Finally, Winter contends that the district court erred by not giving a nonexclusive possession instruction to the jury. Winter concedes that she did not request a nonexclusive possession instruction at trial. Nevertheless, she argues that a nonexclusive possession instruction was both legally and factually appropriate. In response, the State concedes that a nonexclusive possession instruction would have been both legally and factually appropriate in this case. However, the State contends that the failure to give such instruction was not clearly erroneous. The State argues that Winter has failed to establish that the giving of a nonexclusive possession instruction would have resulted in a different verdict.

Because Winter did not request a nonexclusive possession instruction at trial, we review the district court's failure to give the instruction under a "clearly erroneous" standard of review. K.S.A. 2021 Supp. 22-3414(3); see also *State v. Williams*, 295 Kan.

15

506, 286 P.3d 195 (2012). "Instructional error is clearly erroneous [only] when '"the reviewing court is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred."' [Citation omitted.]" *State v. Owens*, 314 Kan. 210, 235, 496 P.3d 902 (2021). In other words, we must affirm Winter's convictions unless we are firmly convinced the jury would have reached a different verdict had a nonexclusive possession instruction been given. *Valdez*, 316 Kan. at 6. Moreover, it is Winter's burden to firmly convince us that the outcome would have been different but for the instructional error. See *State v. Berkstresser*, 316 Kan. 597, 605, 520 P.3d 718 (2022), citing *State v. Solis*, 305 Kan. 55, 65, 378 P.3d 532 (2016).

The record reveals that the district court properly instructed the jury on the charge of possession of methamphetamine and on the charge of possession of drug paraphernalia. Although the instruction given by the district court on possession of methamphetamine was consistent with PIK Crim. 4th 57.040 (2018 Supp.), it is undisputed that this section of PIK Criminal (Fourth) also includes optional language regarding nonexclusive possession. As indicated above, the State candidly admits that the optional language was both legally and factually appropriate in this case. For this reason, our role is limited to determining from a review of the record on appeal whether we are firmly convinced that the jury would have reached a different verdict had the nonexclusive possession instruction been given.

As the State points out, the methamphetamine and glass pipe were not merely found inside the van. Rather, these items were found inside a zippered pouch in a black purse located on the floorboard near the front driver's side of the vehicle. Moreover, as discussed above, there were several pieces of circumstantial evidence presented by the State at trial to link Winter to the black purse. Significantly, Deputy Davis' body camera footage—which was viewed by the jury—showed that Winter looked through the black purse when she was initially asked for her driver's license and she referred to it as "my purse." Deputy Davis also testified that Winter never told him that the black purse was

16

not hers even after he told her about the drug pipe that was found in it. Instead, she simply denied any knowledge of the pipe.

Further, a review of the trial transcript reveals that trial counsel zealously presented Winter's theory of defense to the jury. In particular, Winter's attorney argued to the jury that neither the methamphetamine nor the glass pipe belonged to her. Additionally, the defense presented Winter's employer as a witness to say that multiple people had access to the van. Also, Winter's son testified that his mother did not use methamphetamine and did not own a black purse similar to the one found on the driver's side floorboard of the vehicle. He also claimed that he learned about one month later that his former girlfriend—who had been sitting in the rear of the van at the time of the stop—was a methamphetamine user. Nevertheless, the video of the traffic stop shows that the former girlfriend retrieved her driver's license from a different purse located in the back seat of the van and not from the black purse in which the methamphetamine and pipe were found.

After considering the testimony of the witnesses, reviewing the exhibits including the video of the traffic stop, and listening to the arguments of counsel, the jury rejected Winter's theory of defense. Rather, after weighing the evidence and determining the credibility of the witnesses, the jury unanimously concluded that she was guilty beyond a reasonable doubt of both possession of methamphetamine and possession of drug paraphernalia as well as transportation of an open container. Accordingly, based on our review of the record on appeal, we are not firmly convinced the jury would have reached a different verdict had a nonexclusive possession instruction been given by the district court.

Affirmed.

17